Aaron M. & Donna J.B. HOFFMAN, et al., Plaintiffs,

v.

MINUTEMAN PRESS INTERNATIONAL INC., Defendant.

No. 90–0105–CV–W–3.

United States District Court, W.D. Missouri, W.D.

Sept. 19, 1990.

Ron L. Findley, Dale, Flynn, Barnes, McBride & Findley, St. Joseph, Mo., for plaintiffs.

William A. Lynch, Michael J. Furlong, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

Before the Court is defendant's motion to transfer. The Court held a hearing on the motion at which counsel for both sides presented oral arguments, though no formal testimony was offered. Since the hearing, affidavits of the plaintiffs have been filed with the Court.

This is a diversity action based upon franchise agreements which plaintiffs entered into with defendant. Plaintiffs are suing defendant for fraud and, alternatively, for breach of contract. In reliance upon a forum selection clause found in the franchise agreement, defendant seeks the transfer of this case to the United States District Court for the Eastern District of New York, Eastern Division. The forum selection clause states in relevant part:

[I]n the event of any litigation commenced by either party hereunder, such action shall be commenced and tried in a court of competent jurisdiction in the State of New York, or in the United States District Court for the Eastern District of New York....

Defendant's Motion to Transfer Exhibit C, ¶ 24(d) at 20; Exhibit D, ¶ 24(d) at 20; Exhibit E, ¶ 24(d) at 26; and Exhibit F, ¶ 24(d) at 26.

### I.

■ In diversity actions, a federal district court's decision to grant or deny a motion to transfer a case is controlled, not by state law regarding forum selection clauses, but by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The existence of a forum selection clause is only one of the various factors to which a court must look when ruling a motion to transfer, though such a clause is "a significant factor that figures centrally in the District Court's calculus." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988). Forum selection clauses are to "receive neither dispositive consideration ... nor no consideration ..., but rather the consideration for which Congress provided in § 1404(a)." *Id.* at 31, 108 S.Ct. at 2245.

■ Generally, the burden of establishing that an action should be transferred is on the moving party. 1A Pt. 2 *Moore's Federal Practice* ¶ 0.345[5] n. 3 (collecting cases). Indeed, this Court has said that "[i]t is incumbent upon the party seeking transfer to make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed." *Houk v. Kimberly–Clark Corp.*, 613 F.Supp. 923, 927 (W.D.Mo.1985). The interests which the Court must balance include "the convenience of the parties, the convenience of the witnesses, the availability of judicial process to compel the attendance of unwilling witnesses, the governing law, the relative ease of access to sources of proof, the possibility of delay and prejudice if a transfer is granted, and practical considerations indicating where the case can be tried more expeditiously and inexpensively." *Id.* "Only one of these—the convenience of the parties—is properly within the power of the parties themselves to affect by a forum-selection clause." *Midwest Mechanical Contractors, Inc. v. Tampa Constructors, Inc.*, 659 F.Supp. 526, 531 (W.D.Mo.1987) (quoting *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757 (3rd Cir.1973)).

554

One court has held that forum selection clauses alter the burden of persuasion on motions to transfer. In *In re Ricoh Corp.*, 870 F.2d 570 (11th Cir.1989), the court held that:

> In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff has already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our system.

*Id.* at 573. Concluding that *Stewart* stands for the proposition that "a choice of forum clause rarely will be outweighed by other 1404(a) factors," the *Ricoh* court, in effect, erected a presumption that such a clause does in fact outweigh the other § 1404(a) factors and that the presumption will only be overcome if the party resisting application of the clause can show that his is the exceptional case in which the other § 1404(a) factors outweigh the forum clause. *Id.* In other words, in all but the rare case, a forum selection clause will be dispositive of the issue instead of being "a significant factor that figures centrally in the District Court's calculus."[1] This Court believes that such a dramatic alteration of the law—shifting the well-established burden of persuasion on a motion to transfer—is unnecessary to accommodate the concerns that the *Ricoh* court expressed.

The integrity of contractual obligations is unquestionably important. That concern, however, can be easily accommodated. If a party resisting the enforcement of a forum clause does not wish the clause to figure into a court's balancing of the § 1404(a) factors, then he should bear the burden of showing why the clause should not factor into the court's decision.[2] Thus, the party moving for the transfer still bears the burden of proving that the balance of § 1404(a) interests weighs in favor of transfer, and, unless the party resisting application of the forum clause can demonstrate why it should not, the clause will factor significantly into the balancing.

## II.

Having determined the relative burdens on a motion to transfer in a case involving a forum clause, the Court now turns to the question of when a forum clause should not, as a matter of law, be considered in the § 1404(a) balancing. In *Stewart*, Justice Scalia dissented because he believed the validity of a forum clause should be governed by state law. The majority disagreed, holding that the *enforceability* of a forum clause, as a matter of policy, is a question of federal law under § 1404(a). Justice Scalia believed that state law or policy *specifically governing the enforceability of forum clauses* should govern a question of the validity of a forum clause. Thus, if state law were to hold all forum clauses unenforceable as a matter of policy, Justice Scalia would give the clause no consideration under § 1404(a). 487 U.S. at 35, 108 S.Ct. at 2246. The majority concluded, however, that the problem with this reasoning is that if state law held all forum clauses automatically enforceable as a matter of policy, then a district court attempting to give effect to state law would have to ignore § 1404(a) balancing and enforce the clause. *Id.* at 31 n. 10, 108 S.Ct. at 2244 n. 10. None of the justices in *Stewart*, however, addressed the problem of a forum selection clause which is alleged to be invalid under the general principles of a state's contract law. That is the problem which this Court must address.

---

1. Three members of the Supreme Court would also give controlling weight to forum clauses. Justice Kennedy, joined by Justice O'Connor, concurred in *Stewart* but wrote separately "to observe" that valid forum clauses should be "given controlling weight in all but the most exceptional cases." 487 U.S. at 33, 108 S.Ct. at 2250. Justice Scalia, dissenting, agreed with Justice Kennedy on this point. *Id.* at 35 n. *, 108 S.Ct. at 2246 n. *.

2. This is consistent with pre-*Stewart* case law that placed the burden of showing why a forum clause should not be enforced on the party resisting enforcement of the clause.

## A.

Because a forum selection clause is only one factor to be considered under § 1404(a), the question of whether a forum clause is enforceable is essentially a question of whether a court will consider it in its balancing of § 1404(a) factors. There is abundant dictum in federal case law that a forum selection clause will be enforced unless it can be shown that the forum clause itself is "unreasonable" or was the result of fraud or overreaching. Such cases rely primarily upon *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), where the Supreme Court considered the enforceability of a forum selection clause in the context of a contract between an American corporation (Zapata) and a German corporation. In *The Bremen*, the Court emphasized two concerns which dictated that for *federal district courts sitting in admiralty*, "such clauses are prima facie valid and should be enforced unless enforcement is shown to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. at 1913.

First, the Court underscored the policy concern that "[t]he expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist upon a parochial concept that all disputes must be resolved under our laws and in our courts." *Id.* at 9, 92 S.Ct. at 1912. Second, the Court found "strong evidence that the forum clause was a vital part of the agreement, and it would be unrealistic to think that the parties did not conduct their negotiations ... with the consequences of the forum clause figuring prominently in their calculations." 407 U.S. at 14, 92 S.Ct. at 1915. The Court wrote:

> There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, would be given full effect. In this case, for example, we are concerned with a far from routine transaction between companies of two different nations contemplating the tow of an extremely costly piece of equipment from Louisiana across the

Gulf of Mexico and the Atlantic Ocean, through the Mediterranean Sea to its final destination in the Adriatic Sea. In the course of its voyage, it was to traverse the waters of many jurisdictions. [It] could have been damaged at any point along the route, and there were countless possible ports of refuge. That the accident occurred in the Gulf of Mexico and the barge was towed to Tampa in an emergency were mere fortuities. *It cannot be doubted for a moment that the parties sought to provide for a neutral forum for the resolution of any disputes arising during the tow.*

*Id.* at 12–13, 92 S.Ct. at 1914–15 (emphasis added). "[A]greeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce and contracting." *Id.* at 13, 92 S.Ct. at 1915. Thus, the Court concluded that such a "forum clause should control absent a strong showing that it should be set aside." *Id.* at 15, 92 S.Ct. at 1916.

In a later case, the Court clarified somewhat what it was contemplating by the fraud, undue influence and overweening bargaining power proviso that it referred to in *The Bremen*. In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Court was again confronted with an American corporation (Alberto) and a German citizen (Scherk) who had entered into a contract. The contract contained an arbitration clause which the Court described as "a specialized forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." 417 U.S. at 519, 94 S.Ct. at 2457. The arbitration clause provided that any controversy or claim arising under the contract would be referred to arbitration before the International Chamber of Commerce in Paris, France. Alberto filed suit in a federal district court in Illinois alleging fraud and violations of the Securities Exchange Act of 1934. Scherk filed a motion to dismiss, or, alternatively to stay the action pending arbitration in Paris. At issue was whether the arbitration clause should be enforced

pursuant to the United States Arbitration Act, 9 U.S.C. § 1 et seq. (1970).

The Court held the arbitration clause enforceable. It is not entirely clear whether the Court relied in part upon some legislative preference, as reflected in the Arbitration Act, for enforcing arbitration agreements. It is clear, however, that the Court relied heavily upon the *Bremen* Court's considerations of international trade in upholding the arbitration clause. The Court wrote:

> [M]ost significantly, the subject matter of the contract concerned the sale of business enterprises organized under the laws of and primarily situated in European countries, and whose activities were largely, if not entirely, directed to European markets.... In this case, ... in the absence of the arbitration provision, considerable uncertainty existed at the time of the agreement, and still exists, concerning the law applicable to the resolution of disputes arising out of the contract. Such uncertainty will almost inevitably exist with respect to any contract touching two or more countries, each with its substantive laws and conflict-of-laws rules. A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction.

417 U.S. at 515–16, 94 S.Ct. at 2455. Thus, the Court held that the arbitration clause should be enforced.

More significantly, in footnote 14 of the *Scherk* opinion the Court explained—in dictum—that the "fraud" exception to enforcement of forum selection clauses as recognized in *The Bremen*, "does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion." *Id.* at 519 n. 14,

94 S.Ct. at 2457 n. 14. In support of this statement, the Court cited *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), another Arbitration Act case, although all parties to the suit were Americans. The Court there held that the Arbitration Act mandated the enforcement of arbitration clauses in the absence of a claim of "fraud in the inducement of the arbitration clause itself...." *Id.* at 403–04, 87 S.Ct. at 1806.

Justice Black dissented in *Prima Paint*. He focused, in part, upon the framework for analysis which had been employed by the circuit courts. That framework focused on whether an arbitration clause is "severable" from the rest of the contract and, thus, enforceable regardless of whether the rest of the contract is enforceable. The majority recognized that the Second Circuit, which it affirmed, had held that such clauses are severable as a matter of federal law. *Id.* at 402, 87 S.Ct. at 1805. The Court's resolution of the problem, as the dissent noted, implicitly accepted that holding. 388 U.S. at 411, 87 S.Ct. at 1810 (Black, J., dissenting) ("the Court approves the Second Circuit's fashioning of a federal separability rule which overrides state law to the contrary"). Justice Black, on the other hand, thought that a question of the "separability" of an arbitration clause was a question of state law, rather than federal. Thus, if an arbitration clause was separable from the rest of the contract as a matter of state law, then it could be enforced independently of the other provisions of the contract, even if the rest of the contract was being attacked as fraudulently induced. The claim of fraudulent inducement would then be resolved by the arbitrators. Alternatively, if an arbitration clause was not severable from the contract, then a claim of fraud in the inducement would be an attack on the entire contract, including the arbitration clause. Such a claim would raise the question of whether there was anything to be arbitrated at all, a question which would be resolved by the courts.

The majority held that "Congress has provided an explicit answer" to these thor-

ny problems in the Arbitration Act. The Court recognized that under § 4 of the Act, the arbitration should proceed unless "the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue." *Id.* at 403, 87 S.Ct. at 1806 (quoting the Act). The Court went on to hold that:

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

388 U.S. at 403–04, 87 S.Ct. at 1806. As the dissent noted, however, the language of section 4, "far from providing an 'explicit answer,' merely poses the further question of what kind of allegations put the making of the arbitration agreement in issue." *Id.* at 410, 87 S.Ct. at 1809. The majority implicitly held that "claims of fraud in the inducement of the contract generally" do not undermine the arbitration clause, and that only a claim of fraud in the inducement itself goes to the making of the arbitration clause. The practical effect of that holding—to which Justice Black strenuously objected—is that arbitration clauses are, as a matter of federal law, "separable" from the rest of the contract and enforceable despite general allegations of fraud in the inducement of the contract.

### B.

■ Unlike *Prima Paint* and *Scherk,* where the Arbitration Act was involved, there is no federal statute which "provides an explicit answer" to the validity of forum clauses such as the one involved in the present case. Similarly, *The Bremen* and *Scherk* are very different from the instant case because they both involved international transactions fraught with uncertainties that could only be alleviated by agreeing in advance to a "neutral forum."

By contrast, the uncertainties which inhere in interstate transactions may be eliminated to much the same degree by a choice of law provision in the contract. Forum clauses, which are so vital in the international context, are more often nothing more than "unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages" in the interstate context. *Scherk,* 417 U.S. at 517, 94 S.Ct. at 2456. Certainly, the Court's concerns about American parochialism are not implicated in the interstate transaction.

The apparent rationale for the *Scherk* dictum that forum clauses are enforceable unless they themselves are the product of fraud seems, at first blush, perfectly sensible. The ostensible rationale is that a forum clause should not be presumed to be the result of fraud, even if the rest of the contract is. Fraud in the inducement of the contract, so the reasoning goes, does not undermine the validity of the parties' choice of some forum as the best forum for resolution of their disputes. That reasoning, while perhaps valid in the international context, is based on assumptions that are not warranted in the domestic context. A forum clause in a domestic contract may not constitute the parties' mutual agreement as to what is the best forum. It may very well benefit only one of the parties and actually be a burden for the other. The burdened party might have agreed to the forum clause as a trade-off for other advantageous provisions in the contract. Thus, such a clause may represent an allocation of risks to which the parties agreed for any number of reasons unrelated to any real evaluation of what is the best forum for both parties. If a forum clause is included in a contract for such reasons, then the burdened party's claim of fraud in the inducement of the contract necessarily taints the forum clause; but for the fraud in the inducement, the burdened party would never have agreed to the burdensome forum clause.[3]

---

**3.** Another problem with the *Scherk* dictum is that it is difficult to envision a situation where there could be fraud in the inducement of a forum clause itself. Even where one party assures a second party that such a clause is a formality and would never be used (as is alleged in the present case), there is probably no fraud. There must be some justification for the second party to rely on the first party's representations

On the other hand, Justice Black's "severability" approach is really no less impractical in cases involving allegations of fraudulent inducement. Redeemer clauses could simply be inserted into contracts so that despite actual fraudulent inducement, a forum clause could nevertheless be "severable" and therefore enforceable. The only sensible solution is not to enforce forum clauses in legitimate fraudulent inducement cases. It is simple common sense that allegations of fraud in the inducement put into question the validity of the entire contract, including the forum clause. This rule of disregarding forum clauses in fraud cases creates only a minor exception to the principles generally applied to forum selection clauses because it applies only in cases involving allegations of fraud in the inducement.[4]

Moreover, the Eighth Circuit appears to be ill at ease with enforcement of forum clauses that may be tainted by fraud. In *Farmland Industries, Inc. v. Frazier–Parrott Commodities, Inc.*, 806 F.2d 848 (8th Cir.1986), the court refused to enforce a forum selection clause in a case involving allegations of fraud by the defendants. Farmland had opened two commodities futures trading accounts with the two defendant commodities brokerage firms. Farmland signed an agreement with the firms and the agreement contained a forum selection clause which provided for an Illinois forum in:

> any judicial action, including any complaint, counterclaim, cross-claim, or third party complaint, arising directly, indirectly, or otherwise in connection with, out of, related to or from this Agreement or any transaction covered hereby or otherwise arising in connection with the relationship between the parties....

*Id.* at 849. Farmland brought suit against the firms, their parent corporation and three individuals (two of whom were employees of one of the firms) alleging that one of its own employees entered into a kickback scheme with the three individual defendants. The suit included claims for fraud, breach of fiduciary duty, and violations of the securities laws. Both this Court and the court of appeals held that such a suit was "broader" than the forum selection clause. "Farmland's causes of action do not all arise directly or indirectly from the agreement and ... Farmland could not have anticipated having to litigate these claims in Illinois." *Id.* at 852.

Another basis for the decision not to enforce the forum selection clause in *Farmland* was that if the allegations of fraudulent acts were proven, the entire contract—including the forum selection clause—would be vitiated. *Id.* at 851. "[W]e believe that in a situation where a fiduciary relationship (such as between a commodities broker and its customer) is created by a contract tainted by fraud, the person defrauded can not be held to the contractual forum selection clause." *Id.* The court held that it would be "grossly unfair ... [to] force Farmland to comply with an agreement which never would have been made had the existence of the fraud been known." *Id.* at 851–52.

The court did not explain the significance of the fiduciary relationship, and whether the relationship *is* significant has been questioned by at least one other court. *Stephens v. Entre Computer Centers, Inc.*, 696 F.Supp. 636, 640 n. 5 (N.D.Ga. 1988) ("An exception for such a relationship does not seem warranted"). At any rate, the rule which this Court is adopting

---

and in such a case there would likely be no justification.

Aside from claims that fraud in the inducement of the contract taint the forum clause, only outlandish scenarios approximate the situation that the Court contemplated in *Scherk*. For instance, if one party had a kick-back scheme arranged with the chosen forum, the other party would have a good claim of fraud in the inducement of the forum clause. However, in the absence of such far-flung circumstances, it is difficult to see how a forum clause could

ever be claimed to be the result of fraud, unless an allegation of fraud in the inducement of the contract puts the validity of the forum clause in issue.

4. Frivolous claims of fraud injected into lawsuits for the sole purpose of defeating otherwise valid forum clauses may be sufficiently deflected through motions to dismiss, motions for summary judgment and motions for sanctions pursuant to Fed.R.Civ.P. 11.

is entirely consistent with the *Farmland* court's rationale that it would be "grossly unfair" to force a party "to comply with an agreement which never would have been made had the existence of the fraud been known." The fact that there is no fiduciary relationship involved in the present case is a distinction without a difference.

## IV.

■ In this case, the Court finds that at most only two of the relevant factors in this case could possibly weigh in favor of transfer: the governing law clause and the forum selection clause (which is some indication of the convenience of the parties). Under the terms of the contract, the governing law in this case is to be New York law and that fact weighs in favor of transferring this case to the New York district court, assuming the choice of law provision is valid. The remaining factors, however, do not favor transfer.

The submitted affidavits demonstrate the extreme hardship that litigating in New York would impose on these plaintiffs. It is clear that defendant is in a far better position to litigate in Missouri than are plaintiffs to litigate in New York. The other factors—the convenience of the witnesses, the availability of judicial process to compel the attendance of unwilling witnesses, the relative ease of access to sources of proof, the possibility of delay and prejudice if a transfer is granted, and practical considerations indicating where the case can be tried more expeditiously and inexpensively—seem roughly equal, whether the case is litigated in Kansas City or New York. Thus, the question of whether this case should be transferred depends on the weight accorded the forum clause.

This case involves allegations that small, unsophisticated business people were fraudulently induced to enter franchise agreements which they never would have entered but for the fraud. The plaintiffs vigorously oppose the transfer of this case because to litigate in New York would be such a hardship that they would be forced either to forego this suit or to carry a heavy financial burden in addition to the one they allege defendant has already dumped on them. These plaintiffs deserve their day in court. If they successfully prove their allegations of fraud, the forum selection clause is not worth the paper on which it is written. To enforce such a clause on the front end in cases like this one would be grossly unfair. No one should be able to erect, through forum selection clauses, a shield of immunity to all litigation in undesirable forums. Forum selection clauses that are drafted broadly so as to encompass even tort litigation that may arise between the contracting parties are themselves prima facie evidence of fraud and overwhelming bargaining power. The Court therefore finds that the forum clause in this case, in light of plaintiffs' allegations, cannot figure significantly into the consideration of the motion to transfer. Thus, the motion must be denied.

The motion must be denied for one other reason. The forum selection clause specifically provides for a New York forum "in the event of any litigation commenced by either party *hereunder.*" This case involves more than "litigation commenced hereunder." Of course, one of plaintiffs' claims is for breach of contract, and that claim clearly arises under the franchise agreement. Nonetheless, plaintiffs also strike at the very heart of these franchise agreements by alleging that defendant fraudulently induced them to enter the franchise agreements. The "hereunder" language in these franchise agreements limits application of the forum selection clause to suits arising under the agreement and seeking enforcement of the agreement. The claim of fraudulent inducement in this case is an attack *on* the agreement itself and therefore does not arise *under* the agreement. Just as the claims in *Farmland* were held to be broader than those contemplated by the much more expansively phrased forum selection clause in that case, the claim of fraudulent inducement in this case is outside the scope of the forum clause. Accordingly, for all of the foregoing reasons it is hereby

560

ORDERED that defendant's motion to transfer to the United States District Court for the Eastern District of New York, Eastern Division is DENIED.

IT IS SO ORDERED.