NATIONAL MICROGRAPHICS SYSTEMS, INC., Plaintiff,

v.

CANON U.S.A., INC., Defendant.

Civ. A. No. 93–255(JBS).

United States District Court, D. New Jersey.

June 30, 1993.

Philip B. Seaton and Gregory A. Lomax, Kozlov, Seaton, Romanini & Brooks, P.C., Cherry Hill, NJ, for plaintiff.

George F. Kugler, Jr., Archer & Greiner, Haddonfield, NJ, and Richard H. Silberberg, and John G. Rainey, Jr., Dorsey & Whitney, New York City, for defendant.

## OPINION

SIMANDLE, District Judge:

Presently before the court in this diversity action is the motion of the defendant pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1404(a), to dismiss this action for improper venue or, in the alternative, to transfer the action to the United States District Court for the Eastern District of New York. This motion requires us to determine the applicability and validity of two forum selection clauses which are contained in two separate, written agreements between these parties. For the reasons stated below, we will deny the defendant's motion to dismiss and will grant its motion to transfer.

## I. BACKGROUND

This action for breach of contract, an accounting and similar claims, arises from a longstanding commercial relationship between a retail dealer and a national supplier. This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

Plaintiff National Micrographics Systems, Inc. ("NMS") is a micrographics products dealer, primarily engaged in the business of, *inter alia,* designing, selling, and servicing imaging and information systems to end users. Micrographics products include conventional items (such as microfilm readers and printers) and optical discs for electronic storage and document retrieval. NMS is a Maryland corporation with offices in Silver Spring, Maryland and Norristown, Pennsylvania. While NMS has many customers in New Jersey and has made many sales here, it does not maintain an office in this State.

Defendant Canon U.S.A., Inc. ("Canon") is a New York Corporation based in Lake Success, New York. It is engaged in the marketing of Canon-brand products throughout the United States.

Defendant Canon markets its micrographics products principally through networks of authorized, non-exclusive, independent retail dealers situated throughout the country. Each such dealer has entered into one or more written dealer agreements with Canon. Canon and NMS entered into three written agreements, described below, in 1974, 1990 and 1991.

In 1973, plaintiff NMS became the first authorized dealer of Canon products in the United States. Canon purportedly sought out NMS with the express purpose of establishing a marketing presence in the United States for its newly developed micrographics product line. It allegedly sought out NMS in particular because NMS, at that time, was an experienced and established micrographics distributor, with extensive customer contacts in the federal government.

In May 1974, a few months after the inception of the parties' relationship, Canon and NMS (which was then known as National Microfilm Systems, Inc.) entered into a Retail Dealer Agreement. *See* Exhibit A annexed to the Affidavit of John M. Sullivan ("Sullivan Aff."). This Agreement appointed NMS as an authorized, non-exclusive retail dealer of Canon-brand micrographics products in a territory consisting of the District of Columbia, the State of Maryland, and portions of the Commonwealth of Virginia. While the 1974 Retail Dealer Agreement contains a choice-of-law clause providing that it is to be governed by and construed in accordance with the laws of the State of New York, *id.* at ¶ 17, that Agreement does not include a forum selection clause requiring that any disputes be litigated in the New York state or federal courts.

In or about June 1990, Canon and NMS entered into an Optical Disk Filing Products Retail Dealer Agreement (the "1990 Optical Disk Agreement"), pursuant to which Canon appointed NMS as an authorized, non-exclusive retail dealer of Canon-brand optical disk filing products, with a primary area of sales and service responsibility consisting of portions of the State of Maryland. *See* Sullivan Aff., Exhibit C. Paragraph 20.1 of the 1990 Optical Disk Agreement provides that "THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK" (emphasis in original), and further provides that:

> [NMS] consents to the jurisdiction and venue of any local, state or federal court located within the State of New York ... and further agrees that *any and all causes of action whether or not arising under this Agreement by and between the parties hereto shall only be brought in a local, state or federal court situated within the State of New York.* (Emphasis added).

In or about November 1991, Canon and NMS entered into a Micrographics Dealer Agreement (the "1991 Micrographics Dealer Agreement"). This 1991 Agreement was Canon's updated form of its retail dealer agreement for its authorized, non-exclusive micrographics dealers. The Agreement assigned to NMS a primary area of sales and service responsibility consisting of portions of the Commonwealth of Pennsylvania, portions of the State of New Jersey, and the State of Delaware. Sullivan Aff. at ¶ 7 and Exhibit B. Paragraph 17 of the 1991 Micrographics Dealer Agreement provides that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of New York," and further provides that:

674

[NMS] consents to the jurisdiction and venue of any local, state or federal court located within the State of New York ..., and further agrees that any and all causes of action hereunder by and between the parties hereto shall only have jurisdiction and venue in the local, state or federal courts of the State of New York.

Each of these three agreements was signed on behalf of NMS by its President, D. Richard Shonk. Mr. Shonk has more than twenty years of experience in the office equipment industry and as president of NMS. NMS never objected to nor sought to negotiate the choice of law or forum selection provisions contained in the 1990 Optical Disk Agreement and the 1991 Micrographics Dealer Agreement. Sullivan Aff. at ¶ 11.

NMS alleges that between 1974 and about 1978, NMS was Canon's exclusive distributor in NMS's sales territories to the Federal Government. Complaint at ¶ 8; Affidavit of D. Richard Shonk ("Shonk Aff.") at ¶ 4. NMS states that it developed a significant market presence for Canon products in the Federal Government during that time. Complaint at ¶ 18; Shonk Aff. at ¶ 4.

According to the Complaint, in the late 1970's Canon formed a division known as the Government Marketing Center for purposes of making direct sales to the federal government. Complaint at ¶ 14. *See also* Shonk Aff. at ¶ 5. NMS objected to the establishment of that division, on the ground that the division would directly compete with NMS in NMS's sales territories. Complaint at ¶ 14; Shonk Aff. at ¶ 5. NMS alleges that in 1978, NMS's Shonk, and its Vice President, Stephen Dring, met with Canon's then national sales manager in micrographics at NMS's office in Silver Spring, Maryland to resolve this issue. Complaint at ¶ 15; Shonk Aff. at ¶ 6. According to NMS, the parties allegedly agreed at that meeting to the following:

(a) NMS would remain a Canon distributor and use its extensive government contacts to continue to develop a market for

Canon Micrographic Products with the Federal Government.

(b) In return, Canon agreed (i) not to sell Canon Micrographic Products to the Federal Government in NMS's sales territory; or (ii) if Canon or any other distributor sold Canon Products to the Federal Government in NMS's territory, Canon agreed to pay NMS the standard sales commission NMS would have earned on such sales.

Shonk Aff. at ¶ 7. *See also* Complaint at ¶ 16. (This alleged agreement will hereinafter be referred to as the "1978 Oral Agreement.") NMS asserts that in reliance upon the Oral Agreement, it directed substantial efforts towards marketing Canon Products to the federal government.

NMS alleges that while Canon abided by the terms of the Oral Agreement for a while, some time in or about 1986 Canon secretly stopped paying NMS commissions owed to NMS under the purported terms of the Oral Agreement.[1] NMS further alleges that Canon breached the Oral Agreement by, *inter alia*, announcing in January 1993 that the Canon Government Marketing Center would commence direct sales to the federal government in NMS's sales territory. Complaint at ¶ 28.

NMS commenced this litigation in January 1993 with the filing of its Complaint and a motion for a temporary restraining order in this court, notwithstanding the forum selection provisions in the 1990 Optical Disk Agreement and the 1991 Micrographics Dealer Agreement.[2] NMS's Complaint asserts claims for breach of contract (Count One), accounting (Count Two), estoppel (Count Three), fraudulent inducement (Count Four), tortious interference with prospective economic advantage or business expectancies (Count Five), breach of implied covenant of good faith (Count Six), equitable and promissory estoppel (Count Seven), and injunctive relief (Count Eight). The Complaint does not refer at all to either the 1991 Micrographics Dealer Agreement or the 1990 Opti-

1. NMS's Complaint (and Mr. Shonk's affidavit) state that NMS did not become aware that Canon had secretly stopped remitting commissions to NMS until late 1992.

2. NMS's application for a temporary restraining order was later withdrawn.

cal Disk Agreement, and refers only indirectly to the 1974 Retail Dealers Agreement.[3]

Canon denies the material allegations of the Complaint, and has asserted several affirmative defenses. Canon also has asserted counterclaims against NMS. Before the court now is Canon's motion to dismiss for lack of venue pursuant to Fed.R.Civ.P. 12(b)(3) or, in the alternative, to transfer this action to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).

## II. *DISCUSSION*

Canon's motion is primarily based upon the forum selection provisions contained in the 1991 Micrographics Dealer Agreement and the 1990 Optical Disk Agreement. Canon argues that each of the two clauses provides an independent basis for dismissing the Complaint for improper venue, and that each should be accorded substantial weight in deciding whether to transfer this case pursuant to 28 U.S.C. § 1404(a). Such clauses are not at all uncommon, and courts have often dismissed and/or transferred cases on the strength of such clauses. NMS asserts, however, that these particular clauses (and the Agreements of which they are a part) are limited in scope and that they do not govern NMS's claims. Because these forum selection clauses are the predicate for Canon's motion, we must first address at the threshold the issue of whether NMS's claims fall within the ambit of these clauses.

A. *The Applicability of the Forum Selection Clauses*

1. *The 1990 Optical Disk Agreement*

■ According to its express terms, the forum selection clause in the 1990 Optical Disk Agreement applies to "any and all causes of action whether or not arising under this Agreement[.]" NMS does not argue that the scope of this language is too narrow to encompass its claims against Canon. Rather, it cites to cases in which courts refused to enforce forum selection clauses where the plaintiff claimed that the contract containing the clause was induced by fraud. It also contends that the Optical Disk Agreement's forum selection clause should not be held to govern the present litigation because that Agreement is "insignificant" in the context of NMS's overall relationship with Canon.

It is true that allegations of fraud can defeat forum selection clauses in certain limited circumstances. Allegations of fraud will bar enforcement of forum selection clauses, however, only where "the *inclusion of that clause in the contract* was the product of fraud or coercion." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974) (emphasis in original).[4] *See also Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992) (citing *Scherk, supra*, and *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972)). It is insufficient to allege that one was induced generally to enter into the contract itself as a result of fraud. *See Scherk*, 417 U.S. at 519 n. 14, 94 S.Ct. at 2457 n. 14; *Riley*, 969 F.2d at 960. Similarly, general allegations of fraud, deceit and misrepresentation are not adequate to void a forum selection clause. *Moses v. Business Card Express, Inc.*, 929 F.2d 1131,

---

**3.** Canon vigorously denies NMS's allegations concerning the arrangements purportedly agreed to under the Oral Agreement. *See* Canon's Answer and Counterclaims, attached as Exhibit A to the Affidavit of John G. Rainey, Jr., Esq. *See also* Canon's Reply Brief at 5. Canon points out that the 1974 Retail Dealer Agreement provides at ¶ 16 that it "constitutes the full and complete agreement between the parties and any amendments or modifications hereof, to be effective, must be in writing and signed by the parties hereto." The 1991 Micrographics Dealer Agreement and the 1990 Optical Disk Agreement both provide, at ¶¶ 17 and 20.2, respectively, that those Agreements "constitute[] the entire agree-

ment between the parties, superseding all previous proposals, oral or written."

**4.** *Scherk* dealt with the applicability of a provision requiring that all disputes be referred to arbitration before the International Chamber of Commerce in Paris, France. The Court characterized the arbitration provision, though, as "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Id.*, 417 U.S. at 519, 94 S.Ct. at 2457. The Court specifically referred to "arbitration *or* forum-selection clause[s]" (emphasis added) in its footnote 14, which we have cited here in the text.

1138 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). The Sixth Circuit explained that there instead "must be a well-founded claim of fraud in the inducement of the clause itself, *standing apart from the whole agreement,* to render [a forum selection clause] unenforceable." *Id.* (citation omitted) (emphasis in original).

Here, despite its reliance on the case law concerning this fraud escape hatch, NMS does not allege either in its Complaint or through its president, Mr. Shonk, that the forum selection clause itself was included as a by-product of fraud or coercion. Nor, for that matter, does NMS even allege that it was fraudulently induced to enter into the 1990 Optical Disk Agreement in general.[5] Mr. Shonk merely asserts in his affidavit that had he known that Canon previously had breached the alleged 1978 Oral Agreement between NMS and Canon, he would not have executed the 1990 Optical Disk Agreement.[6] *See* Shonk Aff. at ¶ 15.[7] This self-serving, conclusory assertion stops far short of alleging fraud in the first instance, let alone with respect to the inducement of the forum selection clause itself.

NMS's reliance on the cases it cites is misplaced. In *Farmland Industries, Inc. v. Frazier–Parrott Commodities, Inc.,* 806 F.2d 848 (8th Cir.1986), the court refused to enforce a forum selection clause, holding that where a fiduciary relationship (such as between the commodities brokers-defendants and their customer-plaintiff) is created by a contract tainted by fraud, the party defraud-ed cannot be held to the forum selection clause. *Id.,* 806 F.2d at 851. No such fiduciary relationship exists between NMS and Canon.

NMS also cites us to *Hoffman v. Minuteman Press International, Inc.,* 747 F.Supp. 552 (W.D.Mo.1990), which rejected a defendant's claim that *Farmland* was distinguishable because the parties therein were fiduciaries. The *Hoffman* court stated that "[t]he fact that there is no fiduciary relationship involved in the present case is a distinction without a difference." *Id.,* 747 F.Supp. at 559. We, on the other hand, believe that a plain reading of the Court's language in *Farmland* reveals that the fiduciary relationship was, if not a controlling factor, at least a significant one in the Eighth Circuit's analysis. *See Farmland,* 806 F.2d at 851. The *Hoffman* court's conclusion was also motivated in part by its agreement with the *Farmland* court's conclusion that it "would be grossly unfair" to force a party "to comply with an agreement which never would have been made had the existence of the fraud been known." *Hoffman,* 747 F.Supp. at 559 (citing *Farmland,* 806 F.2d at 851–52).[8] We agree that it would be very unlikely, to say the least, that any party would enter into a contract with a party it knew had defrauded it. But we cannot agree that this observation in and of itself is enough to overcome the established requirement that there be fraud in the inducement of the forum selection clause in particular.[9]

5. Count IV of the Complaint, which alleges fraudulent inducement, is not directed at the Optical Disk Agreement or the 1991 Micrographics Dealer Agreement, but rather cites the 1974 Dealer Agreement and the Oral Agreement, and complains generally about Canon's conduct and the detrimental ramifications Canon's actions allegedly have had upon NMS's business.

6. Interestingly, Mr. Shonk does not make any such statement with regard to the 1991 Micrographics Dealer Agreement even though it, too, was executed after Canon allegedly had breached the purported oral agreement.

7. Mr. Shonk further states that he "did not intend to restrict NMS's choices of fora for disputes arising under the parties' more substantial agreements." Shonk Aff. at ¶ 14. He contends that "[t]o give this clause a contrary construction would be completely unreasonable under the circumstances." *Id.*

8. In addition to its focus on the fiduciary relationship and the unfairness it believed a contrary ruling would impose upon the plaintiff, the Eighth Circuit also looked to the public policy of Missouri, which forbids forum selection clauses. *See Farmland,* 806 F.2d at 852 (citation omitted). Neither the public policy of New York nor New Jersey, in contrast, is hostile to such clauses. *See In re Diaz Contracting, Inc.,* 817 F.2d 1047, 1050 and n. 5 (3d Cir.1987) (noting that New York and New Jersey law follow the standard of *The Bremen* ).

9. At least one other court has expressly declined to follow *Farmland. See Stephens v. Entre Computer Centers, Inc.,* 696 F.Supp. 636, 640 n. 5 (N.D.Ga.1988) (stating that an exception for a

■ NMS also argues that the forum selection clauses should not be enforced because they appear in agreements which are insignificant to the parties' main claim. NMS's Brief at 17–19. We disagree with this assessment.

The 1990 Optical Disk Agreement is one of only three written agreements which establish and govern the underlying supplier/dealer relationship between Canon and NMS. NMS is authorized to market two types of Canon-brand micrographics products, and the 1990 Optical Disk Agreement is the document establishing NMS's right to market one of these two lines, while the other line—conventional micrographics—is covered by the 1991 Micrographics Dealer Agreement.

NMS cites three district court cases to support its argument that the forum selection provision in the 1990 Optical Disk Agreement should be ignored. Its reliance on these cases is misplaced. Among other reasons, the courts in those cases refused to enforce forum selection clauses because the clauses were found in documents that were either peripheral to the parties' relationship or that were signed by only one of several party-defendants, and because the governing state law had a strong public policy disfavoring forum selection clauses. *See Snider v. Lone Star Art Trading Co.*, 672 F.Supp. 977 (E.D.Mich.1987), *aff'd*, 838 F.2d 1215 (6th Cir.1988); *Lulling v. Barnaby's Family Inns, Inc.*, 482 F.Supp. 318 (E.D.Wis.1980).[10]

Here, in contrast, the forum selection clause is found not in some peripheral agreement but in a dealer agreement, clearly a document vital to the relationship between the parties giving rise to this litigation. Further, as noted previously (at note 8, *supra*) forum selection clauses do not offend the public policies of either New York or New Jersey.

2. *The 1991 Micrographics Dealer Agreement*

■ The language of the forum selection provision in the 1991 Micrographics Dealer

Agreement is more narrow in scope than that in the Optical Disk Agreement, signed in 1990. Paragraph 17 of the Micrographics Dealer Agreement refers to "any and all causes of action *hereunder* by and between the parties hereto[.]" (Emphasis added). The plaintiff argues that its Complaint does not fall within the more limited ambit of this clause.

The defendant, on the other hand, charges that the plaintiff is attempting to create the misleading impression that this litigation involves only a single, isolated aspect of the parties' relationship, i.e., the purported terms of the 1978 Oral Agreement. Canon asserts, and we agree, that NMS's characterization of the scope of its claims is belied by the allegations of its Complaint. The wide breadth of NMS's allegations makes it abundantly clear that NMS seeks to put at issue "the genesis, development and deterioration of its relationship with Canon, including purported attempts by Canon to induce NMS to sell only Canon-brand micrographics products, and alleged efforts by Canon to damage NMS's business reputation and relationships with customers and ultimately to 'destroy' NMS's business." Canon Reply Brief at 11–12. Since, according to Canon, the nature and scope of the parties' relationship are created and defined by the parties' written dealer agreements, including the 1991 Agreement, the forum selection clause in the Micrographics Dealer Agreement is fully applicable to plaintiff's claims.

The Third Circuit recognizes that all claims arising out of a business relationship may be subject to the forum selection clause of the contract defining the parties' duties. In *Crescent International, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir. 1988), for example, a clause in a real estate sales contract provided that "any litigation upon any of [its] terms ... shall be maintained" in a state or federal court in Miami, Florida. *Id.*, 857 F.2d at 944. The plaintiff

fiduciary relationship "does not seem warranted and appears to the Court to be inconsistent with the *Scherk* rule").

10. In *Anselmo v. Univision Station Group, Inc.*, 1993 WL 17173 (S.D.N.Y. January 15, 1993), the

court actually decided that it would transfer the case pursuant to 28 U.S.C. § 1404(a) on the basis of a forum selection clause unless the plaintiffs filed a Second Amended Complaint withdrawing those claims held to be governed by that clause.

had argued that this forum selection clause did not apply to its claims of RICO violation, fraud, unfair competition and tortious interference with Crescent's business relationships. The district court disagreed and dismissed the action. The Third Circuit affirmed, stating that "[a]lthough only one of Crescent's claims is based on a breach of contract theory, all of them involve allegations arising out of the agreement implicating its terms." *Id.* The Court concluded that it is sufficient that "the claims asserted arise out of the contractual relationship and implicate the contract's terms." *Id.*

Similarly, in *Coastal Steel Corp. v. Tilgham Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983), the plaintiff was a third-party beneficiary of a contract between two British firms which provided that "[i]n the event of any dispute arising the same shall be determined by the English Courts of Law." *Id.*, 709 F.2d at 193. The Third Circuit enforced this forum selection provision even though the plaintiff/third-party beneficiary asserted a claim not for breach of that agreement, which was for the purchase of machinery, but instead a claim based upon the allegedly defective design of the machinery, as well as claims sounding in tort. The Court held that the written agreement between the two British firms was "the basic source of *any* duty to [plaintiff]. There is no evidence suggesting that the clause was not intended to apply to all claims growing out of the contractual relationship." *Id.* at 203 (emphasis in original). *See also Interamerican Trade Corp. v. Companhia Fabricadora de Pecas*, 973 F.2d 487 (6th Cir.1992).

Likewise, in the present case, the most recent and fundamental documents defining the parties' relationship contain the New York forum clauses such that it is fair to conclude that these clauses should receive substantial weight in determining the forum of all claims between these parties. It is most noteworthy that in the two most recent agreements embracing the parties' commer-

cial relationship, the parties have agreed to New York as the appropriate forum for litigation. In any event, NMS can hardly claim any surprise at having to litigate against Canon in New York in the face of these two forum selection clauses. Further, for the reasons previously discussed, we find that each of these clauses sufficiently encompasses NMS's present claims.

### B. *Motion to Dismiss Under Fed.R.Civ.P. 12(b)(3)*

■ Canon has moved to dismiss for lack of venue pursuant to Fed.R.Civ.P. 12(b)(3) based upon the forum selection clauses. This presents an interesting analytical question. Dismissing this case pursuant to Rule 12(b)(3) would hardly be a novel application of that rule. To be sure, many courts have granted motions to dismiss under Rule 12(b)(3) on the basis of a forum selection clause. *See, e.g., Riley, supra,* 969 F.2d at 956; *Spradlin v. Lear Siegler Management Services Co., Inc.*, 926 F.2d 865 (9th Cir. 1991); *Commerce Consultants Int'l, Inc. v. Vetrerie Riunite, S.p.A.*, 867 F.2d 697 (D.C.Cir.1989); *Grossman v. Citrus Associates of the New York Cotton Exchange, Inc.*, 706 F.Supp. 221 (S.D.N.Y.1989).[11] In our opinion, however, this is an improper application of Rule 12(b)(3).

Rule 12(b)(3) provides for a motion to dismiss for improper venue. *See* Fed.R.Civ.P. 12(b)(3). "Venue," in turn, is defined by statute at 28 U.S.C. § 1391, which sets forth where venue may properly be laid. The determination of the appropriate venue under § 1391 revolves around factors such as whether the court is acting within its diversity or federal question jurisdiction; whether the defendant is a citizen or an alien or a corporation; and the jurisdiction in which the defendant(s) resides or in which a corporation does business. 28 U.S.C. § 1391. Section 1391 does not list "forum selection clauses" as a factor to be considered when determining where venue may be laid.

---

**11.** Professors Wright & Miller note without discussion or comment that while objections to venue typically stem from an alleged failure to adhere to the requirements specified in 28 U.S.C. § 1391 or some other statutory provision, in re-

cent years there have been a number of venue motions based on forum selection clauses. 5A C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1352 at 261–63 (1990).

Venue, as that term is defined by Congress, is proper in this district. The defendant, Canon, is a corporation over which the State of New Jersey clearly has personal jurisdiction,[12] making the District of New Jersey a proper venue for this litigation. *See* 28 U.S.C. § 1391(c). The fact that the parties contractually agreed to litigate disputes in another forum is not a question of venue, but one of contract, which will be enforced unless fundamentally unfair, *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

Congress has set forth, through 28 U.S.C. § 1391, where a dispute may properly be litigated in the absence of any *ex ante* agreement by the parties to litigate in a particular forum. While the plaintiff ordinarily enjoys the advantage of choosing, within the constraints set forth by § 1391, the forum within which to bring suit, venue is a personal privilege of the defendant. 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 2d*, § 3826 at 257 (1986). "In most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Id.* at § 3801 at 4 (emphasis in original).

In many cases, though, especially one involving a corporation, a plaintiff may properly file his action in more than one venue, some of which may be less convenient to the defendant than others. Where a potential defendant has secured from a prospective plaintiff an agreement providing that any future disputes between the parties will be litigated in a particular, pre-specified venue(s), whether it be one prescribed by § 1391 or some other venue which would not be proper under § 1391, the defendant possesses a contractual, not a statutory, right to litigate in that pre-selected venue. The right asserted by Canon to defend itself in what is for it the more convenient venue of the Eastern District of New York, and not the plaintiff's chosen venue here in the District of New Jersey, arises from the forum selection clauses contained in the contracts NMS entered into with it, not from Congress's solicitude for it as manifested by § 1391. Rule 12(b)(3) thus is not a proper means for enforcing NMS's contractual promise to file suit in the state or federal courts of New York.[13] *See Lambert v. Kysar*, 983 F.2d 1110, 1112 n. 1 (1st Cir.1993) (stating that motions for dismissal based upon forum selection clauses are founded on Rule 12(b)(6), not Rule 12(b)(3)).

This conclusion is bolstered by the Supreme Court's decision in *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In *Stewart*, the Court addressed the question of whether a federal court sitting in diversity should apply state or federal law in adjudicating a motion to transfer a case to a venue provided in a contractual forum-selection clause. The defendant in that case had originally brought a motion in the district court for the Northern District of Alabama either to transfer the case under 28 U.S.C. § 1404(a) or to dismiss the case for improper venue under 28 U.S.C. § 1406. In a footnote, the Supreme Court, citing 28 U.S.C. § 1391(c) (venue proper in judicial district in which a corporation is doing business), noted that the parties did not dispute that the district court had properly denied the motion to dismiss the case for improper venue under

---

**12.** Canon has a distribution center in Jamesburg, New Jersey, where Canon personnel conducted a substantial amount of business with NMS personnel. *See* Shonk Aff. at ¶ 18.

**13.** Canon argues that this court may, "in its discretion, determine that the most appropriate means of enforcing the parties' forum selection agreements is by dismissal of the action so that it may be re-commenced in New York." Canon's Reply Brief at 16. The cases it cites in support of this contention, do not, however, provide the "clear authority" to dismiss under Rule 12(b)(3) based upon a forum selection clause, *id.* at 16 n.

8, which Canon asserts they do. In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the defendant had moved for summary judgment under Rule 56 based upon a forum selection clause, not to dismiss under Rule 12(b)(3). *Id.* at ——, 111 S.Ct. at 1524. In *In re Diaz Contracting, Inc.*, 817 F.2d 1047 (3d Cir.1987), the defendant moved to dismiss on the basis of a forum selection clause. It is not clear, however, whether the defendant moved under Rule 12(b)(3) or, as did the defendant in *Instrumentation Associates, Inc. v. Madsen Electronics, Ltd.*, 859 F.2d 4, 6 n. 4 (3d Cir.1988), under Fed.R.Civ.P. 12(b)(6).

28 U.S.C. § 1406(a) [14] because the defendant apparently did business in the Northern District of Alabama, where the plaintiff had filed its suit. *Id.,* 487 U.S. at 28 n. 8, 108 S.Ct. at 2243 n. 8. *See also Crescent International, supra,* 857 F.2d at 944 n. 1 (citing *Stewart* ).

Because venue is proper in this District, we will deny the defendant's motion to dismiss for improper venue under Rule 12(b)(3). For the reasons discussed below, however, we will grant Canon's motion to transfer this case to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).

C. *Motion to Transfer Under 28 U.S.C. § 1404(a)* [15]

■ The Supreme Court held in *Stewart Organization, Inc. v. Ricoh Corp., supra,* that federal law, specifically 28 U.S.C. § 1404(a), not state law, governs a district court's decision whether to give effect to a forum selection clause and transfer an action to another court.[16] *Id.,* 487 U.S. at 32, 108 S.Ct. at 2245. As the Court noted, § 1404(a) calls upon the district court to weigh a number of case-specific factors when reviewing a motion to transfer. *Id.,* at 29, 108 S.Ct. at 2244. The Court stated that "[t]he presence of a forum selection clause ... will be a

*significant* factor that figures *centrally* in the district court's calculus." *Id.* (emphasis added). "Thus, while other factors might 'conceivably' militate against a transfer, *see* [*Stewart* ] at 487 U.S. at 30–31, 108 S.Ct. at 2244, the clear import of the Court's opinion is that the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989) (after remand from the Supreme Court).[17]

■■ We have already determined that the forum selection clauses in the 1990 Optical Disk Agreement and the 1991 Micrographics Dealer Agreement are valid and applicable to the plaintiff's claims. In accordance with *Stewart,* we accord the parties' contractual choice of venue significant weight in deciding whether to transfer this case to the Eastern District of New York. The forum selection clauses are not dispositive, however. *Stewart,* 487 U.S. at 31, 108 S.Ct. at 2245. We must also consider other factors specific to this case to determine whether the court should transfer this action. *Id.* The terms of the statute suggest that three factors must be considered in transferring a

14. That *Stewart* dealt with a motion under 28 U.S.C. § 1406(a) rather than one under Fed. R.Civ.P. 12(b)(3) is, we believe, a distinction without a difference. Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The only difference between Rule 12(b)(3) and 28 U.S.C. § 1406(a) is that the former specifically provides that a defendant may bring a motion to dismiss for improper venue. Both provisions are triggered by the same defect, however: noncompliance with the statutory venue provisions of 28 U.S.C. §§ 1391–1403. *See* Lederman, *VIVA ZAPATA!: Toward a Rational System of Forum–Selection Clause Enforcement in Diversity Cases,* 66 N.Y.U.L.Rev. 422, 445 (1991).

15. Title 28, U.S.C. § 1404(a) provides that:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

16. The parties' expended much energy debating whether the Supreme Court's decision in *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) is applicable

here. We need not spend much time on this dispute. In *The Bremen,* the Supreme Court, sitting in admiralty jurisdiction, concluded that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.,* 407 U.S. at 10, 92 S.Ct. at 1913. The Court stated in *Stewart,* a diversity action, that "*The Bremen* case may prove 'instructive' in resolving the parties' dispute[.]" *Id.,* 487 U.S. at 28, 108 S.Ct. at 2243. Our review here, though, is clearly controlled by the *Stewart* Court's *holding* that where the district court is reviewing a motion to transfer under 28 U.S.C. § 1404(a), as opposed to, say, a motion for summary judgment based upon a forum selection clause, *see Carnival Cruise Lines, supra,* 499 U.S. 585, 111 S.Ct. 1522, or a motion to dismiss under Fed.R.Civ.P. 12(b)(6), *see Instrumentation Associates, supra,* 859 F.2d at 6 n. 4, our decision is governed by § 1404(a).

17. The Eleventh Circuit stated that this conclusion was "made explicit" by Justice Kennedy's concurrence, which concluded that "a valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." *In re Ricoh Corp.,* 870 F.2d at 573 n. 6 (quoting *Stewart,* 487 U.S. at 33, 108 S.Ct. at 2250 (Kennedy, J., concurring)).

case: (1) the convenience of the parties, (2) the convenience of the witnesses and (3) the interests of justice. *See AT & T Co. v. MCI Communications Corp.*, 736 F.Supp. 1294, 1305 (D.N.J.1990); *Sandvik, Inc. v. Continental Ins. Co.*, 724 F.Supp. 303, 306 (D.N.J. 1989); *Derry Finance N.V. v. Christiana Companies, Inc.*, 555 F.Supp. 1043, 1045 (D.Del.1983).[18] A review of these factors reveals that this case would warrant transfer even in the absence of the forum selection clauses.

■■ Canon is a New York corporation whose principal place of business and corporate headquarters is in the Eastern District of New York. NMS is a Maryland corporation which, although it does business in New Jersey, does not maintain an office in this State. In this Circuit, a plaintiff's choice of forum is of "paramount concern" in deciding a motion to transfer venue. *Sandvik*, 724 F.Supp. at 307 (citations omitted). Notwithstanding the deference accorded a plaintiff's choice of forum, though, its choice is by no means dispositive. *AT & T*, 736 F.Supp. at 1306 (citations omitted). "The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *E.I. Du Pont de Nemours & Co. v. Diamond Shamrock Corp.*, 522 F.Supp. 588, 592 (D.Del.1981). Moreover, as New Jersey is not NMS's home forum, NMS's forum choice is entitled to less deference than if it had chosen its home forum. *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F.Supp. 473, 480 (D.N.J. 1993) (citations omitted).

As for witnesses, while NMS has identified four potential witnesses, *see* NMS's Brief at 7, none of them reside in New Jersey. Two of the four are located in Maryland, one in Washington, D.C., and one in California. New Jersey may require a slightly shorter and more convenient commute for three of these four potential witnesses than New York, but not enough to outweigh the other factors favoring transfer, including the fact that Canon has identified at least five potential witnesses who work at Canon's head-

quarter's in New York, of whom one was, however, recently reassigned to New Jersey. *See Ricoh v. Honeywell*, 817 F.Supp. at 484–85; *E.I. Du Pont de Nemours*, 522 F.Supp. at 592.

Further, virtually all of the documents related to this litigation are located either at Canon's headquarters in New York or at NMS's offices in Maryland and Pennsylvania. NMS has not identified any documents which are situated in New Jersey. This fact also militates in favor of transfer. *See Ricoh*, 817 F.Supp. at 483–84.

Further still, it appears that none of the "central facts of [NMS's] lawsuit occur[red]" in New Jersey. Indeed, NMS alleges that the meeting which purportedly resulted in the 1978 Oral agreement occurred in Maryland, not New Jersey. Also, the predominant sales to the federal government at issue in this suit occur in the Washington, D.C. area. "When the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference." *Ricoh*, 817 F.Supp. at 481 (citations omitted). In addition and related to this consideration is the principle that "[t]he burden of jury duty 'ought not to be imposed upon the people of a community which has no relation to the litigation.' " *Id.* at 486 (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 529–30, 110 S.Ct. 1274, 1282–83, 108 L.Ed.2d 443 (1990) (citation omitted)).

■ In light of these facts, we believe it to be entirely appropriate to exercise this court's discretion to grant Canon's motion under § 1404(a) and transfer this case to the Eastern District of New York. NMS asserts that because Canon has—purportedly—failed to demonstrate any inconvenience to it by litigating this action in New Jersey, "the convenience of the parties' factor" weighs in NMS's favor. NMS's Brief at 33. Notwithstanding NMS's assertion, we believe that Canon has most certainly demonstrated that it is less convenient for it to litigate this case in Camden, New Jersey, the vicinage to which this case has been assigned, as op-

---

18. A case may be transferred under § 1404(a) only to a venue "where it might have been brought." 28 U.S.C. § 1404(a). As Canon is a New York corporation and subject to the personal jurisdiction of that State, this action could have been brought in the Eastern District of New York. *See* 28 U.S.C. § 1391(c).

posed to the Eastern District of New York, in which Canon's corporate headquarters are located. Moreover, as the party moving for transfer, Canon would ordinarily bear the burden of demonstrating that the balance of § 1404(a) considerations weighs in favor of transfer. *See In re Ricoh Corp.*, 870 F.2d at 573. The burden of persuasion is altered, however, where there is a valid forum selection clause. *Id.* As the Eleventh Circuit stated:

> In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system.

*Id.* (citations omitted).[19]

NMS, a Maryland Corporation whose attorneys are located in Cherry Hill, New Jersey, surely would be somewhat more inconvenienced by having to litigate this case in New York rather than here, plaintiff's most recent forum choice. But this relatively minor increased burden on NMS is inadequate to defeat Canon's motion to transfer in light of NMS's prior contractual agreement to litigate in New York, and the other case-specific considerations. Virtually all of these considerations militate overwhelmingly in favor of transfer.

## III. *CONCLUSION*

For the reasons discussed herein, we find that the forum selection clauses contained in the 1990 Optical Disk Agreement and the 1991 Micrographics Dealer Agreement encompass NMS's present claims. Because

venue is proper in this District, we will deny defendant Canon's motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(3). We will, however, grant Canon's motion to transfer this case to the United States District Court for the Eastern District of New York under 28 U.S.C. § 1404(a). The court finds that such transfer is warranted in light of the two forum selection clauses and all of the other case-specific considerations relevant to a court's § 1404(a) analysis which militate in favor of transfer.

An appropriate Order will be entered.

## *ORDER*

This matter having come before the court upon the motion of defendant Canon U.S.A., Inc., to dismiss for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) or, in the alternative, to transfer this action to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a); and the court having considered the submissions of the parties and having heard the arguments of counsel; for the reasons expressed in the Opinion of today's date; and for good cause shown;

It is on this 30th day of June, 1993, hereby

Ordered that defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(3) is *DENIED;* and it is

FURTHER ORDERED that the defendant's motion to transfer this action to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a) is *GRANTED* and that this action shall be and it hereby is transferred to the United States District Court for the Eastern District of New York.

---

**19.** In addition, we believe that even the cases cited by the plaintiff on this question support a shifting of the burden. While these cases state that the moving party bears the burden of showing that the § 1404(a) factors weigh in favor of transfer, they also conclude that the party resisting the enforcement of a forum selection clause should bear the burden of showing why that clause should not factor into the court's § 1404(a) analysis. *See Nelson v. Master Lease Corp.*, 759 F.Supp. 1397, 1400 (D.Minn.1991) (citing *Hoffman v. Minuteman Press International, Inc.*, 747 F.Supp. 552, 554 (W.D.Mo.1990)). And under *Stewart*, the clause is to be given significant consideration by the court.