**LICENSED PRACTICAL NURSES, TECHNICIANS AND HEALTH CARE WORKERS OF NEW YORK, INC., Plaintiff,**

v.

**ULYSSES CRUISES, INC., d/b/a Premier Cruises Defendant.**

**No. 00 Civ. 4349(GEL).**

United States District Court, S.D. New York.

Nov. 15, 2000.

---

Mitchel B. Craner, New York City, for Plaintiff Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc.

Michael E. Unger, De Orchis, Walker & Corsa, New York City, for Defendant Ulysses Cruises, Inc.

## OPINION AND ORDER

LYNCH, District Judge.

Plaintiff union purchased tickets from defendant cruise line for 90 of its members, officials and guests for a Caribbean cruise, intending to hold business meetings during the course of the voyage. These plans were frustrated when many of the passengers came down with a bacterial infection. The union brought this action in the courts of New York against the cruise line, alleging that defendant had "breached its agreement promise and warranty to [provide] a safe and reasonable environment" aboard ship, and seeking reimbursement for the tickets, as well as for other expenses involved in bringing the members of the New York-based union to Jamaica for the unhappy cruise. (Compl.¶ 17.)

Defendant removed the action to this court, invoking federal jurisdiction on grounds of diversity of citizenship. It then moved to dismiss, arguing that the union is bound by contractual provisions, printed on the purchased tickets, that require any lawsuit against the cruise line relating to the contract be brought (1) within one year of the incident giving rise to the action and (2) either in a (state) court located in Dade County, Florida, or in the United States District Court for the Southern District of Florida. This lawsuit meets neither of these conditions. Plaintiff maintains that it is not bound by the provisions (although it apparently concedes that the individual passengers would be) because it claims to be suing on a contract, separate from the tickets themselves, by which cruise line agreed to provide not (just) a cruise but a conference facility.

The case presents a number of issues concerning the effect of contractual provisions limiting litigation. Defendant is correct that this action cannot be maintained in this court at this time. But precisely why, and precisely how this court should dispose of the case, turn out to involve complicated questions that have puzzled the courts.

The court having carefully considered the submissions of the parties, defendant's motion to dismiss is granted.

# I

## Choice of Law

The first question to be resolved is what law governs the validity and interpretation of the litigation-limiting clauses of the contract. Neither party has explicitly addressed this question Defendant relies primarily on federal cases, all of which ultimately derive from *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), which favors the enforcement of forum-selection clauses; plaintiff cites no sources of law whatsoever. Perhaps the parties believed that the answer was obvious or that the question was academic; if so, perhaps they were right. Although the analysis takes a few interesting turns, there is ultimately no doubt that, however the case is viewed, federal law controls; moreover, since federal law, New York law and (if relevant) Florida law all seem to agree on the basic principles to be applied, it may not make a great deal of difference in the end whose law governs. Nevertheless, some explanation should be given of the decision to apply federal law.

In removing the case from the New York courts, defendant invoked our diversity jurisdiction. In diversity cases, the question whether state or federal law controls a particular issue is always present.

Generally speaking, matters of "procedure" are determined by federal law, while matters of "substantive law" are controlled by state law, although the line between the two is notoriously elusive. *See generally Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The Second Circuit has held that the enforceability of forum-selection clauses should be decided according to federal law even in diversity cases, concluding that "[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature." *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir.1990).[1] Since *Jones*, right or wrong, is the controlling authority in this circuit, it must be followed, and federal law applied.

 Still, this court has a lingering doubt whether, if the issue came before the Supreme Court, the *Jones* decision would prevail. It is strongly arguable that in a diversity case, the validity of such clauses should be determined by state law, which generally governs substantive questions involving the making and enforcement of contracts. *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 38–41, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (Scalia, J., dissenting). As one commenta-

---

1. The opinion is somewhat perfunctory. The conclusory classification of the issues as "procedural," quoted in the text above, is the extent of the reasoning provided. The Court of Appeals appears to have believed that it was simply reaffirming "the well established rule of this Circuit that *Bremen* applies with equal force in diversity cases." *Jones*, 901 F.2d at 19. It is hardly clear, however, that there was such an established circuit rule before *Jones*. The Court cited only two previous diversity cases in which it had applied the *Bremen* standard, *Karl Koch Erecting Co. v. New York Convention Center Development Corp.*, 838 F.2d 656, 659 (2d Cir.1988), and *Seward v. Devine*, 888 F.2d 957, 962 (2d Cir. 1989). But neither case explicitly considered the *Erie* question. In both, the Court simply cited *The Bremen*, an admiralty case, and *Bense v. Interstate Battery Sys. of America, Inc.* 683 F.2d 718, 720–21 (2d Cir.1982), a federal question (anti-trust) case, without con-

sidering whether the diversity context made a difference. Moreover, as the *Jones* court recognized, New York courts had cited *The Bremen* with approval, and thus at the time these cases were decided there was no reason to think that the New York standard for enforcing forum-selection clauses was any different from the federal rule. *See* 901 F.2d at 19 n. 1. *Cf. General Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 358 & nn. 5–6 (3d Cir.1986) (noting that *The Bremen* has been influential in state courts). Indeed, since that time it has become clear that New York also applies the *Bremen* standard. *Brooke Group Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534, 640 N.Y.S.2d 479, 663 N.E.2d 635 (1996). Under these circumstances, the mere citation of *The Bremen* in diversity cases governed in substantive matters by New York law, such as *Koch* and *Seward*, cannot be taken as authoritative holdings on the *Erie* question.

tor has pointed out, "[t]he right to litigate in one forum or another has an economic value that parties can estimate with reasonable accuracy.... Thus, 'ancient concepts of freedom of contract' suggest that forum selection—like price, place of delivery and quality of goods—should be the subject of bargaining in commercial transactions." Patrick J. Borchers, *Forum Selection Agreements in the Federal Courts After Carnival Cruise: A Proposal for Congressional Reform*, 67 WASH. L.REV. 55, 57 (1992) (footnotes omitted). But if a forum-selection clause has economic value, and is a potential subject of bargaining between parties to a transaction, the validity of such a clause would seem to turn on whether the parties' presumptive right to determine the terms of their bargain is trumped by some competing substantive policy consideration, or principle of fairness—for example, a desire to protect consumers against abusive fine-print terms of form contracts. That is a question not of procedure, but of economic policy, within the jurisdiction of the sovereign whose law governs the contract. Thus, although the subject matter of the clause itself may appear procedural—the location of the court that will resolve the dispute—the validity of the clause is more appropriately seen as a matter of substantive contract law. Under the principles established in *Erie*, that question would normally be one of state law.[2]

■ The *Jones* rule, moreover, is not compelled by Supreme Court authority. In *Stewart Organization,* The Supreme Court applied federal law to determine the force of a forum-selection clause in a diversity case, but that was in the context of a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). That context differs in several respects from that of the instant case. First, the defendant there had invoked a *statute* that determined the purely

procedural matter of the place of trial within the federal courts. Congress has the "power to make rules governing the practice and pleading in [the federal] courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either." *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). By authorizing a change of venue procedure in the federal courts, Congress has exercised that power, and created a standard for its application. Whether the plaintiff brings a case in a federal venue permitted by the contract, or brings the case in an unauthorized venue and defendant acquiesces, once the case is in federal court a defendant may invoke federal rules governing the place of trial, and in deciding such a motion, the federal court must apply the standard set out in the governing federal rule or statute, according the forum-selection clause such weight as the statute determines. In this case, unlike *Stewart Organization,* the defendant has not moved for a change of venue under the statute, but instead has sought to enforce the contract provision by moving to dismiss. As will be seen below, there is considerable question whether § 1404(a) governs the disposition of such a motion. If it does not, defendant is simply invoking its common-law right to enforce the terms of a contract, and not relying on an Act of Congress.

Second, *Stewart Organization* expressly does *not* approve application in a diversity case of the judge-made standard of *The Bremen* in preference to applicable state principles of contract law. Instead, while noting that *The Bremen* "may prove 'instructive' in resolving the parties' dispute," 487 U.S. at 28, 108 S.Ct. 2239 (quoting the Ninth Circuit's opinion in *Stewart Organi-*

---

**2.** In addition, the selection of the forum may in turn influence the choice of which state's law will govern the substantive interpretation of the contract. *See* Richard D. Freer, *Erie's Mid–Life Crisis,* 63 TUL. L.REV. 1087, 1134–

1139 (1989). And state choice of law rules govern in diversity cases. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

**398**

*zation* ), it cautions, citing *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641–42, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), that "federal common law developed under admiralty jurisdiction [is] not freely transferable to [the] diversity setting," and "disagree[d]" with the Eleventh Circuit's conclusion that the *Bremen* standard provided the controlling test in a diversity case. 487 U.S. at 28–29, 108 S.Ct. 2239. Thus, as Justice Scalia perceived in dissent, the first question in the case was whether § 1404(a) controlled the case; only if it did not (as he, disagreeing with the majority, believed) was it necessary to address the separate question

whether state or federal law governed in the absence of a controlling statute. 422 U.S. at 35–41, 95 S.Ct. 2091.[3]

In light of these various subtleties and complications, it is not surprising that the courts of appeals, both before and after *Stewart Organization*, have reached conflicting results on the question whether state or federal law controls the validity of a forum-selection clause in a diversity case, with several concluding that the matter is properly governed by state law.[4]

■ Thus, in an ordinary diversity case, this court would be bound by *Jones* to apply federal law, but would do so with

3. The *Erie* question may become increasingly academic, as more and more states adopt the federal rule on forum-selection clauses. At one time, American jurisdictions generally rejected their validity. Today, a clear majority of the states have reversed this stand, and, in agreement with the federal rule of *The Bremen*, will enforce forum-selection clauses unless they create injustice or were imposed by fraud. A 1989 survey found that only 12 states still held such clauses presumptively invalid. Freer, *supra* note 2, at 1095 & nn. 30, 31. Although Florida then appeared to be one of those states, *Tecnitur, S.A. v. Travel America Enters., Inc.*, 462 So.2d 864, 865 (1985), it has since joined the majority. *Manrique v. Fabbri*, 493 So.2d 437, 440 (Fla.1986) ("adopt[ing] the view enunciated in *Zapata*" regarding the enforceability of forum-selection clauses). A number of the other minority states have subsequently joined the majority. *See, e.g., Professional Ins. Corp. v. Sutherland*, 700 So.2d 347 (Ala.1997); *Simplex Time Recorder Co. v. Federal Ins. Co.*, 37 Mass.App.Ct. 947, 641 N.E.2d 1358 (Mass.1994); *Harry S. Peterson Co. v. Nat'l Fire Ins. Co.*, 209 Ga.App. 585, 434 S.E.2d 778 (1993); *High Life Sales Co. v. Brown–Forman Corp.*, 823 S.W.2d 493 (Mo.1992) (en banc); *Perkins v. CCH Computax, Inc.*, 333 N.C. 140, 423 S.E.2d 780 (1992); *Nelms v. Morgan Portable Bldg. Corp.*, 305 Ark. 284, 808 S.W.2d 314 (1991). But the issue nevertheless cannot be dismissed as insignificant. Some states hold fast to their own views on the issue. *See Saxe v. Anderson Kill Olick & Oshinsky, P.C.*, 1996 WL 456360, No. CV 960385479S (Conn.Super.Ct. July 23, 1996) (refusing to enforce a forum-selection clause). And even in states that have fallen into line with the general principles of *The Bremen*, specific applications of those princi-

ples, particularly in consumer cases, may prove more controversial. *See* note 6, below.

4. The Eleventh Circuit applied the federal standard of *The Bremen* in its opinion in *Stewart Organization*, 810 F.2d 1066, but after the Supreme Court's reversal in that case it reached the opposite conclusion. *See Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912 (11th Cir.1989) (applying state law). The Third Circuit, in contrast, rejected use of federal law in a Virgin Islands case before *Stewart Organization*, *General Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356–58 (3d Cir.1986), on grounds that would appear to control in diversity cases, but after *Stewart Organization* it has chosen to treat the diversity issue as open, *Instrumentation Associates v. Madsen Electronics (Canada) Ltd.*, 859 F.2d 4 (3d Cir. 1988). *See also Farmland Industries, Inc. v. Frazier–Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir.1986) (applying state law); *Bryant Elec. Co. v. City of Fredericksburg*, 762 F.2d 1192 (4th Cir.1985) (same). *But see Manetti–Farrow Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir.1988) (applying federal law); *Royal Bed and Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45 (1st Cir.1990) (same); *Northwestern Nat'l Ins. v. Donovan*, 916 F.2d 372, 375 (7th Cir.1990) (same). *See also Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112 (5th Cir.1996) (choosing to treat motion to dismiss based on forum-selection clause as a motion to transfer rather than joining one side and "further complicat[ing]" the *Erie* issue); *Lambert v. Kysar*, 983 F.2d 1110, 1116–17 (1st Cir.1993) (noting the circuit split but declining to reach the *Erie* issue since the governing state law adopted the *Bremen* standard).

some concern that the Supreme Court might eventually reject the rule of that case. In *this* case, however, federal law certainly governs the validity of the clause, entirely apart from the *Jones* rationale, even if the question is viewed as one of substantive contract law. The contract in this case is a maritime contract, governed by the federal maritime law. This is so regardless of whether we accept plaintiff's or defendant's characterization of the dispute. "[I]n determining admiralty jurisdiction the inquiry is 'into the nature and subject-matter of the contract—whether it was a maritime contract, and the service a maritime service, to be performed upon the sea, or upon waters within the ebb and flow of the tide. And, again, whether the service was to be substantially performed upon the sea, or tide-waters, although it had commenced and had terminated beyond the reach of the tide; if it was, then jurisdiction has always been maintained.'" *Archawski v. Hanioti,* 350 U.S. 532, 534 n. 2, 76 S.Ct. 617, 100 L.Ed. 676 (1956) (quoting *New Jersey Steam Navigation Company v. Merchants' Bank,* 47 U.S. (6 How.) 344, 392, 12 L.Ed. 465 (1848)); *see also The Moses Taylor,* 71 U.S. 411, 4 Wall. 411, 18 L.Ed. 397 (1866) (contract for ocean passage is a maritime contract governed by federal law). Whether the transaction is seen purely as a purchase of cruise tickets or as a contract for provision of a (floating) conference facility, the service contracted for was to be performed on the high seas. *Cf. Archawski,* 350 U.S. at 534, 76 S.Ct. 617 (characterization of action does not defeat admiralty jurisdiction, where case essentially arose from breach of contract for ocean passage).

■ In an admiralty case, federal law governs the interpretation and validity of contractual provisions. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). This case, however, was not brought here under our admiralty jurisdiction. Rather, plaintiff filed a common-law breach of contract action in the New York state courts, and defendant then removed the case here.[5] But federal maritime law determines the validity and interpretation of a maritime contract even in a common-law, non-admiralty suit, whether it is being heard in state court or in federal court. *See Everett v. Carnival Cruise Lines,* 912 F.2d 1355, 1357 (11th Cir.1990); *Hodes v. S.N.C. Achille Lauro,* 858 F.2d 905, 909 (3d Cir.1988); *Lerner v. Karageorgis Lines, Inc.,* 66 N.Y.2d 479, 484–85, 497 N.Y.S.2d 894, 488 N.E.2d 824 (1985); *Botial v. Ace Navigation Co.,* 271 A.D.2d 373, 707 N.Y.S.2d 825 (1st Dep't 2000). Regardless of the citizenship of the parties, therefore, and regardless of the technical heading of this court's jurisdiction, this case, as a matter arising under a contract to be performed on the high seas, is properly determined according to federal maritime principles.

II

*The Validity and Application of the Forum–Selection Clause*

■ In this case, the choice of law issue may make little difference in any event. Under federal maritime law, forum-selection clauses will be enforced "unless [the plaintiff can] clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such rea-

---

**5.** Both plaintiff's suit in state court and defendant's choice to remove were entirely appropriate. Although the admiralty jurisdiction is theoretically exclusive, the so-called "saving-to-suitors" clause of the Judiciary Act of 1789, now codified at 28 U.S.C. § 1333(1) "essentially ... provide[s] a plaintiff who has an in personam claim the choice of proceeding in an ordinary civil action in a state or federal court, rather than bringing a libel in admiral-

ty in federal court." 14A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3672 (3d ed.1998) (footnote omitted). Where the plaintiff elects to bring the common-law action in state court rather than invoking the admiralty jurisdiction of the federal court, the case may nevertheless be removed to federal court where there is diversity of citizenship. *Id.* § 3674.

sons as fraud or overreaching." *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. 1907; *see also New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997). New York has adopted the same rule, *Brooke Group Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534, 640 N.Y.S.2d 479, 663 N.E.2d 635 (1996), as has Florida, *Manrique v. Fabbri*, 493 So.2d at 440 (Fla. 1986).

■ Under federal law, there can be no doubt that the forum-selection clause is binding on the parties to this contract. Although *The Bremen* itself, which involved a negotiated forum-selection clause in a non-routine, individually-negotiated contract between two sophisticated business entities, might be distinguishable from this case, in which the contract term is a standard "fine-print" clause in a consumer adhesion contract, any attempt to limit its holding on that ground is precluded by *Carnival Cruise Lines*. That case, like this one, involved a forum-selection clause contained in a form contract drafted by a cruise line and printed on a cruise ticket. Nevertheless, the Court found that the clause was reasonable and enforceable. The Court mentioned various factors as bearing on the reasonableness of the clause: (1) the forum selected was the home base of the defendant cruise line, and the place from which many of its cruises (though not the one at issue in the case) departed; (2) the cruise line had a legitimate interest in limiting the fora in which it could be sued; (3) the clause potentially benefitted all parties by providing clarity in subsequent litigation and allowing reduced costs that could result in lower fares; (4) there was no indication that the purchasers lacked fair notice or were physically or financially incapable of proceeding in the chosen forum; (5) the purchasers' agreement to the clause was not obtained by fraud or overreaching; and (6) Florida was not a "remote alien forum" bearing no relation to a purely local dispute that should logically be resolved elsewhere. *See Carnival Cruise Lines*, 499 U.S. at 590–95, 111 S.Ct. 1522. *See also Hodes v. S.N.C. Achille Lauro*, 858 F.2d at 912–14 (upholding forum-selection clause on similar facts). All of these factors apply at least as favorably to the defendant in this case.[6]

Plaintiff attempts to avoid the force of the forum-selection clause, however, by arguing that while the ticket provision controls the location of any litigation between the cruise line and the *ticket-holders* (that is, the individual members or guests of the union in whose names the tickets were issued), it does not bind plaintiff union, which purchased the tickets. Its complaint, it contends, claims damages for breach of a contract that arises "not from a provision of the ticket contract language which binds the individual passengers, but rather from an independent and separate contract for a cruise convention between

**6.** Some academic commentators have been critical of *Carnival Cruise Lines*, arguing that the Court should have shown more sensitivity to the plight of a consumer of limited resources and sophistication compelled to pursue what may be a relatively small claim at great expense in a distant forum. *See, e.g.*, Borchers, *supra*, at 94 (stating that "Carnival Cruise showed that the Court is headed in the wrong direction" in enforcing forum-selection clauses contained in contracts of adhesion). Since the Supreme Court has settled the question, such arguments are not for this court in any event. But to the extent they have any merit, they are far less applicable to plaintiff here, an entity that has considerably greater resources and sophistication than individual passengers such as the plaintiffs in *Carnival Cruise Lines*, and that is pursuing a claim for nearly $100,000. The commentators' disagreement does, however, point up the potential significance of the *Erie* question addressed in Part I, above. Although both New York and Florida courts seem to accept the rule of *The Bremen*, it is entirely possible that those jurisdictions might be persuaded by the critics who find *Carnival Cruise Lines* not to follow from that rule. *See, e.g.*, *Oxman v. Amoroso*, 172 Misc.2d 773, 659 N.Y.S.2d 963, 967 (1997) (refusing to apply forum-selection clause in form consumer contract). Since this case is governed by maritime law in any event, there is no need to speculate further on this possibility.

plaintiff and defendant." (Pl.'s Mem. Opp. Mot. Dis., at 4.)

This argument is ingenious but unavailing. Plaintiff submits a document showing that in addition to the 90 tickets for passage on the ship, the cruise line agreed to provide, without additional charge, a variety of incidental services appropriate to the holding of business meetings, such as meeting rooms, audiovisual equipment, and refreshments, at various times during the cruise. (Pl.'s Mem. Opp. Mot. Dis., at 1–2; Bruce Decl., Ex. A.) The document demonstrates that the cruise line undertook to provide these additional services, and no doubt if they had failed to do so they would have been in breach of their agreement with the union. But this list of additional, complimentary, services to be provided by the cruise line does not constitute a separate contract with the union.[7] Rather, as plaintiff itself puts it, these services were provided "in order to induce plaintiff to hold the conference on one of defendant's cruise liners." (Pl.'s Mem. Opp. Mot. Dis., at 1.) That is, the consideration for the provision of these services was the purchase, by the union, of the tickets that were then issued in the names of the individual conference participants. The purchase of the tickets was integral to the agreement between the parties, whether that agreement is seen as a contract for a cruise or for a floating convention. And the tickets embody those terms of the agreement that relate to the passage—howsoever supplemented by the modest additional terms relating to the provision of meeting facilities on board. That plaintiff negotiated for additional services does

not mean that it is not bound by the terms of the tickets it purchased, any more than the same fact would save the cruise line from breach if it had provided the meeting facilities, but its ship had never left the dock in Jamaica.

The agreement embodied in the ticket, by its express language, binds the "purchaser" of the ticket as well as the "passenger." Thus, the cover of the ticket provides, in large bold print,[8] the following language:

> *IMPORTANT THAT YOU READ:* This is your ticket contract. It is important that you read all of the terms and conditions of this contract. Your attention is particularly drawn to the exemptions and limitations on the carrier's liability. By accepting this ticket, the *passenger and/or purchaser* agrees to its terms and conditions on his own behalf and also on behalf of any other person or persons for whom this ticket is purchased as his, her or their agent (whether or not signed).

(Buisman Decl. Ex. A) (second emphasis added; first emphasis in original). Similarly, the "fine print" to which this notice refers the reader begins, in its very first paragraph:[9]

> This ticket constitutes a contract between the carrier ... and the *passenger* (whether or not signed by or on his behalf) and all the terms and provisions of both sides of this ticket ... are a part of such contract of [*sic*] which the *passenger and/or purchaser* agrees by accepting this ticket, *both on his own behalf and also on behalf of any other person or persons for whom this ticket is purchased* as his, her or their agent.

---

7. Indeed, if it had been so intended, it would *not* be enforceable, since there is no stated consideration for the provision of the convention services.

8. Plaintiff does not argue that it was not reasonably put on notice of the provision, or that the typography of any part of the agreement constitutes "overreaching" that might make the clause unenforceable under *The Bremen*. On the contrary, it appears to concede that individual passengers would be bound by the

clause (*see* Pl.'s Mem. Opp. Mot. Dis., at 3), and relies exclusively on the asserted distinction between passengers and purchasers in order to escape the force of the clause.

9. Both parties refer to this language as ¶ 8. (*See* Def.'s Mem. Supp. Mot. Dis., at 4; Pl.'s Mem. Opp. Mot. Dis., at 3.) In the only documentary exhibit in the record reflecting the ticket, the language is found in ¶ 1. (*See* Buisman Decl., Ex. A ¶ 1.)

*Id.* ¶ 1 (emphasis added).[10] No doubt the language could be drafted more elegantly, and no doubt defendant's case would be even stronger if the "passenger and/or purchaser" language had been used more consistently throughout the document.[11] Taken together, however, the terms of the ticket make clear that the intention is to bind both the passenger and the purchaser, if the two roles are separated in a particular case. It would be bizarre indeed if the cruise line had drafted language under which, in the event of an alleged breach, passengers who purchased their own tickets would have to sue for refunds in Florida, while purchasers, like the union, who paid for tickets for passengers, were permitted to sue in other jurisdictions. Since the union purchased the tickets, albeit as part of a larger agreement that also provided that the cruise line would provide some additional services, it—as well as the passenger-members on whose behalf it purchased the tickets—is bound by the ticket's terms.

### III

#### *Effect of Applying the Clause*

Since the forum-selection clause binds the union as well as the individual passengers, this action cannot be maintained either in the state courts of New York or in this court. But this still leaves a minor but vexing question as to how this court should dispose of the action. Courts have differed, in cases governed by forum-selection clauses, with respect to the remedy to which the defendant is entitled. The issue is related to the proper characterization of the motion.

■■■ Defendant in this case seeks dismissal of the complaint "for lack of jurisdiction pursuant to the foreign forum selection clause." Notice of Motion, at 1–2. The supporting declaration by defendant's attorney makes clear that the reference is to "lack of *subject matter* jurisdiction." (Unger Decl. ¶ 1) (emphasis added). But as noted above, this court does have subject matter jurisdiction over the case. The Constitution authorizes federal jurisdiction in cases of diversity of citizenship, *see* U.S. Const., art. III, § 2, and Congress has authorized district courts to exercise that jurisdiction by removal under the circumstances present here. *See* 28 U.S.C. §§ 1332(a)(2), 1441(a). Private parties cannot defeat the subject matter jurisdiction

10. In a war of italics, the plaintiff emphasizes the first of the three passages underlined above, and the defendant the latter two. (*Compare* Pl.'s Mem. Opp. Mot. Dis., at 3 *with* Def.'s Mem. Supp. Mot. Dis., at 4.) In a spirit of even-handedness, I am happy to emphasize all three.

11. Curiously, plaintiff's brief memorandum does not quote or in any way rely on the actual language of the forum-selection clause itself, which is found in ¶ 12 of the ticket, and which provides that "it is agreed by and between the *passenger* and the carrier that all disputes and matters whatsoever arising under, in connection with, or incident to this contract shall be litigated [in the selected fora]." (Busiman Decl., Ex. A ¶ 12) (emphasis added). In light of the clear language of the cover and of ¶ 1, the parties' intention that both the "purchaser" of the tickets and the "passenger" agree to and are bound by *all* of the terms of the contract is firmly established, *despite* the occasional failure to repeat the "and/or purchaser" formula. There is no reason to assume that the parties intended to single out this section as one to which only the "passenger" agrees. Notably, ¶ 12 does not provide that only the *passenger* is limited to bringing an action in the selected fora; rather, it provides, within a document that already embodies acceptance of *all* its terms by *both* the "passenger" *and* the "purchaser," that the passenger reiterates his agreement that "all disputes … whatsoever [relating to] this contract," regardless of the identity of the plaintiff, be brought in the selected fora. The broad sweep of the clause, and the clear language of the cover and of ¶ 1 by which the "purchaser" accepts it, make the intention to bind the purchaser sufficiently plain. Plaintiff's failure to rely on the passage further confirms that its argument is not rooted in the specific language of ¶ 12, or indeed on a close reading of any contractual language at all, but rather on its untenable claim that it simply is not bound by the ticket provisions at all, as the purchaser not of tickets but of a "convention."

of the federal courts by means of a forum-selection clause, any more than they could, by the same means, *confer* such jurisdiction on this court in a case in which diversity or a federal question were lacking. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Indeed, the whole point of *The Bremen* was that prior cases disapproving of forum-selection clauses because they illegitimately purported to "oust" a court's jurisdiction were misguided:

> No one seriously contends ... that the forum selection clause "ousted" the District Court of jurisdiction over Zapata's action. The threshold question is whether that court should have *exercised* its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause.

407 U.S. at 12, 92 S.Ct. 1907 (emphasis added). *See also Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167, 60 S.Ct. 153, 84 L.Ed. 167 (1939) ("The jurisdiction of the federal courts—their power to adjudicate—is a grant of authority to them by Congress and thus beyond the scope of litigants to confer").

 Neither does the forum-selection clause defeat the court's *in personam* jurisdiction. In *Carnival Cruise Lines*, the Supreme Court made clear that the question of enforcing a forum-selection clause is distinct from that of *in personam* jurisdiction, treating the issue of forum

selection as "dispositive," and therefore declining to reach "petitioner's constitutional argument as to personal jurisdiction." 499 U.S. at 589, 111 S.Ct. 1522. In some cases, the existence of *in personam* jurisdiction may be influenced by a forum-selection clause. Unlike subject matter jurisdiction, *in personam* jurisdiction may be based on consent. *See Nat'l Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); *Adam v. Saenger*, 303 U.S. 59, 67–68, 58 S.Ct. 454, 82 L.Ed. 649 (1938); *Alexander Proudfoot Co. v. Thayer*, 877 F.2d 912, 921 (11th Cir.1989); *Wilmot H. Simonson Co. v. Green Textile Assocs.*, 554 F.Supp. 1229, 1232 (N.D.Ill.1983).[12] A forum selection clause thus could be highly relevant, or even controlling, as to whether to whether the selected forum has *in personam* power Cf. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (choice of law clause relevant to determination of *in personam* jurisdiction).

Whether such a clause can defeat the *in personam* power of a non-selected forum, however, is a different matter. It could perhaps be argued that, where long-arm jurisdiction is based on a single transaction connected to a state, and in that very transaction the parties have agreed that any lawsuit arising from it should be brought elsewhere, the state did not by that transaction acquire *in personam* jurisdiction. But it would be quite different to argue that, when a person is present in

---

12. An academic commentator has questioned whether contractual consent can serve as a basis for *in personam* jurisdiction absent other contacts with the forum state, and attempted to distinguish consent in advance from waiver by failure to object in an on-going proceeding. David H. Taylor, *The Forum Selection Clause: A Tale of Two Concepts*, 66 Temp. L.Rev. 785, 812–14 (1993). I find the argument unpersuasive. *In personam* jurisdiction is primarily a matter of due process fairness to defendants, protecting them from suit in jurisdictions to which they lack connection. *Ins. Corp. of Ireland*, 456 U.S. at

702–03, 102 S.Ct. 2099. It can hardly be unfair to subject a defendant to suit in a place where he has voluntarily agreed to have disputes resolved (assuming, of course, that the agreement was not the product of overreaching). Nor is there a plausible reason why a state cannot assert sovereign power over those who willingly consent to submit to its authority. Whether consent is manifested in advance or during a suit, or whether it is shown by the fiction of maintaining an agent for service or made expressly in a written contract, may be probative of whether consent has been effected, but the operative feature in cases like *Szukhent* is the consent.

a state, and subject to its courts for all purposes, it could nevertheless carve out by contract an exception to the state's power to adjudicate its rights. Because *in personam* jurisdiction is not contested on this motion, however, these speculations need not be pursued further. Defendant has presented no information about its contacts with New York, and has not sought to argue that it has insufficient contacts to be considered present here for all purposes. Under these circumstances, *in personam* jurisdiction would seem to be conceded, at least for purposes of this motion.[13]

Some courts, including a number of distinguished judges in this district, have treated the existence of a forum-selection clause that requires disputes to be resolved somewhere other than in plaintiff's chosen forum as a flaw in venue. *See, e.g., Medoil Corp. v. Citicorp,* 729 F.Supp. 1456, 1457 n. 1 (S.D.N.Y.1990); *Lexington Investment Co. v. Southwest Stainless, Inc.,* 697 F.Supp. 139, 144 (S.D.N.Y.1988); *Hoffman v. Burroughs Corp.,* 571 F.Supp. 545, 550–51 (N.D.Tex.1982); *Full–Sight Contact Lens Corp. v. Soft Lenses, Inc.,* 466 F.Supp. 71, 74 (S.D.N.Y.1978). Clearly, forum-selection clauses relate to venue, in the most general sense of the word, since they concern the place in which suit can be brought. But to say this is to leave open several questions. Does such a clause render venue improper in the disfavored forum, or is venue technically proper, but subject to transfer or dismissal nonetheless? In either case, is the appropriate remedy transfer or dismissal? Is a motion seeking enforcement of a forum-selection clause properly brought under Rule 12(b)(3) or under Rule 12(b)(6), under 28 U.S.C. § 1404(a) or under 28 U.S.C. § 1406(a)?

No authoritative guidance on these highly technical matters can be found in cases binding on this court, as neither the Supreme Court nor the Second Circuit has addressed these questions directly. In fact, the Second Circuit has acknowledged the confusion that has "developed as to the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause," without attempting to resolve it. *New Moon Shipping,* 121 F.3d at 28–29. Accordingly, this court is free to consider the question independently, with the guidance of any implications that can be drawn from the Supreme Court and Second Circuit opinions dealing with forum-selection clauses, and of the fairly numerous decisions of district courts and courts of appeals that have addressed the issue.

It seems incorrect to treat the clause as defeating venue in the non-preferred forum. Well-reasoned opinions by Judge Sifton in the Eastern District of New York, and Judge Simandle in the District of New Jersey, have rejected the application of Rule 12(b)(3) and § 1406(a), which deal with dismissals for improper venue. *See Haskel v. The FPR Registry, Inc.,* 862 F.Supp. 909, 915–16 (E.D.N.Y.1994); *Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.,* 825 F.Supp. 671 (D.N.J.1993). As Judge Simandle put it:

> Rule 12(b)(3) provides for a motion to dismiss for improper venue.... "Venue," in turn, is defined by statute at 28 U.S.C. § 1391, which sets forth where venue may properly be laid. The determination of the appropriate venue under § 1391 revolves around [various factors listed in that statute, which do not include forum-selection clauses.] Venue, as that term is defined by Congress, is proper in this district.... The fact that the parties contractually agreed to liti-

---

**13.** Defendant's answer asserts lack of *in personam* jurisdiction as an affirmative defense, but the issue is not raised in the present motion. In view of the disposition of this motion, there is no need to decide whether making the present motion waives that issue

for any purposes beyond the present motion. But see Rules 12(g) and 12(h)(1), Fed.R.Civ.P. (defense of lack of jurisdiction over the person waived if it is omitted from motion made under Rule 12 on other grounds).

gate disputes in another forum is not a question of venue, but one of contract, which will be enforced unless fundamentally unfair.

825 F.Supp. at 678–79 (citing *Carnival Cruise Lines* ).

A close examination of the typical forum-selection clause confirms the point that such clauses, while addressing venue in the broad sense of the particular forum where the case should be brought, are not usually concerned with "venue, as . . . defined by Congress." *Nat'l Micrographics,* 825 F.Supp. at 679. Forum-selection clauses are often structured to do *more* than merely identify the appropriate venue within the federal system. In this case, for example, the clause authorizes suit in either a particular federal district, or in any Florida court within a particular county. Thus, the clause purports to preclude suit not only in most federal venues, but also in most venues within the state courts of Florida, as well as in the state courts of any other state. This latter aspect of the clause affects much more than a mere question of "venue," since it deals with the proper sovereign to adjudicate the dispute, not merely the particular location for bringing the suit within that sovereign's court system. Moreover, as with subject matter and *in personam* jurisdiction, it is not clear that the parties have the power to do *so much* as to render venue improper in a location in which Congress has authorized suit. By act of Congress, a civil action based on diversity of citizenship may be brought in a district where "a substantial part of the events . . . giving rise to the claim occurred," 28 U.S.C. § 1391(a)(2); no exception is made for cases where the parties have agreed that suit may not be brought in that district. A district court is required by 28 U.S.C. § 1406(a) to dismiss, or, in the interest of justice, transfer, any case "laying venue in the wrong . . . district." But if a case is brought where "the events . . . giving rise

to the claim occurred," it cannot be said that venue has been laid in the "wrong" district within the meaning of the statutes, simply because the parties agreed that it should be brought elsewhere.

The point is even more dramatically illustrated in this case. Here, plaintiff did not bring the case in the "wrong . . . district." It did not bring the case in any federal district at all, but rather in the courts of New York state. To the extent that doing so violated its agreement with defendant, that violation is not a matter of mere venue, but of the deeper matter of which sovereign entity should be asked to adjudicate the dispute. It was, rather, the defendant itself that laid venue in this district, when it removed the case to federal court. And in doing so, defendant indisputably laid venue in the *correct* district, since the removal statute specifically requires that the case be removed to "the district court . . . for the district . . . embracing the place where such action is pending"—in this case, the Southern District of New York, not the Southern District of Florida. 28 U.S.C. § 1441(a). If Congress under § 1441 has authorized initial venue in a removal case *only* in this district, this district could hardly be the "wrong" district under § 1406.

▮ This conclusion finds modest support in the Supreme Court cases dealing with forum-selection clauses.[14] In *Stewart Organization,* as noted above, the Court affirmed a district court order granting a transfer of venue under § 1404(a), something the district court could not have done if venue had not been technically proper in the first instance, since § 1404(a) presumes that a case is properly brought in the forum district, and authorizes transfer "in the interest of justice" to "any *other* district . . . where [the action] might have been brought" in the first place. (Emphasis added.) At least one district court has read *Carnival Cruise Lines* as implicitly resting on § 1406(a), and thus implicitly

---

**14.** Parsing these cases can provide at most implicit support for any view of the problem,

since the Court did not directly consider questions of remedy or theory.

holding that venue was improper in the original forum. *Flake v. Medline Indus., Inc.*, 882 F.Supp. 947 (E.D.Cal.1995). Since the Court approved dismissal of the action, rather than transfer, and did so solely on the basis of the forum-selection clause, without considering the factors appropriate under § 1404(a)—so the argument goes—it must have acted pursuant to § 1406(a). *Id.* at 951–52. But this logic is flawed, since, as will be seen below, there are other, non-statutory, bases for dismissal that can be invoked.[15] For these reasons, I am persuaded that Judges Sifton and Simandle were correct that a forum-selection clause does not authorize dismissal for improper venue where venue is otherwise properly laid.

More significant, however, than the theoretical propriety of venue is the question of remedy. If the forum-selection clause is valid, and precludes an action in this court, should I dismiss the action or transfer it to the Southern District of Florida, where the clause permitted the plaintiff to bring it? The remedy could affect the future course of the litigation in a variety of ways. Which state's law applies in a diversity case, whether appellate review is available, and the correct calculation of the statute of limitations may all turn on whether the original case is dismissed or merely transferred. *See generally* 15 WRIGHT, MILLER & COOPER, *supra,* § 3846. Of course, the Supreme Court has approved both remedies in different contexts: approving a transfer in *Stewart Organization,* and authorizing a summary judgment of dismissal in *Carnival Cruise Lines.*

■ Some aspects of this problem are resolved by binding authority. *Stewart Organization* clearly stands for the proposition that, *where the party relying on the*

clause moves for a transfer under *§ 1404(a)*, that remedy is available and appropriate, and in that circumstance, the normal factors applicable in deciding such a motion (of which the existence of a forum-selection clause is only one) apply. *See* 487 U.S. at 31–32, 108 S.Ct. 2239. There should be nothing surprising about this result. In this case, for example, as noted above, this court has both subject matter jurisdiction of the cause and (for purposes of this motion at least) *in personam* jurisdiction over the defendant, and venue is properly laid here. There is thus no obstacle to proceeding to adjudicate any issue put by the parties. If a party chooses to invoke the remedy made available by § 1404(a), the court should simply proceed to apply the rule of decision provided by that statute.

■ But suppose the party relying on the clause chooses not to seek a transfer but instead, as has occurred here, to move for dismissal of the action? In *Haskel,* Judge Sifton seemed to conclude that, since a motion to dismiss for improper venue did not lie, the case could not be dismissed, and proceeded to consider whether the case should be transferred to the appropriate federal district. *See* 862 F.Supp. at 916. As Judge Sifton put it,

> The issue here is whether a party may limit the court to considering only dismissal rather than transfer and, to the extent that there is a difference [between the standard under § 1404(a) and the standard of *The Bremen* ], to the standard of *Carnival Cruise* and *The Bremen,* solely by virtue of the language in which he casts his motion. Such a result would be inappropriate....

862 F.Supp. at 915. Moreover, § 1404(a) authorizes the court to act "[f]or the conve-

---

**15.** *Hoffman,* 571 F.Supp. at 551, invokes the authority of 15 WRIGHT, MILLER & COOPER, *supra* § 3847, for the conclusion that a forum-selection clause renders venue improper in a district not authorized by the clause. But the treatise does not address this issue. Remaining agnostic even about whether such provisions affect jurisdiction or venue, the authors merely note that "to the extent that they are enforced, [forum-selection clauses] control the place of suit"—a decidedly uncontroversial and non-technical way of putting the issue that does not address whether venue is technically proper or how the court should remedy violation of the clause. *Id.* § 3847 n. 9, § 3803.1.

nience of parties and witnesses, in the interest of justice," and does not require that such action be taken only on motion. Consequently, there is authority that a court may consider transfer sua sponte, at least after giving the parties an opportunity to be heard. *Starnes v. McGuire*, 512 F.2d 918, 933–34 (D.C.Cir.1974) (en banc). Thus, transfer pursuant to § 1404(a) may be an appropriate remedy for effectuating a forum-selection clause even when the defendant does not seek that remedy, but argues for dismissal instead.

But this does not mean that transfer is the only appropriate remedy, or that dismissal is not available. In many cases, § 1404(a) will not provide a remedy consistent with the forum-selection clause. If, for example, the clause here authorized suit only in the state courts of Florida, transferring the case to another federal district would not adequately enforce the clause. The clause in this case does permit a suit to be brought in a federal district in that state, but it does not require it; the contract permits plaintiff to bring suit in state courts as well as in federal court. True, if it did so, defendant would be able to remove the action to federal court (as it did when plaintiff filed suit in the state courts of New York). It is not clear, however, that this court can or should anticipate what the parties would do in the event plaintiff sued in a Florida state court.

Defendant did not bargain for the case to be litigated only in the Southern District of Florida, or for the right to have any federal court in the country transfer the case there. Any right to have the case transferred must therefore be predicated not on the agreement, but only on the congressional statute, which does not make the clause conclusive. More importantly, to send the case to the Southern District of Florida would eliminate the plaintiff's right to bring the case in a Florida state court. What is clear under the contract, in other words, is not where the case *must* be brought, since it offers a choice of fora to plaintiff, but where it must *not* be brought—which includes this court and the New York state courts. Dismissal thus might well be the remedy most in keeping with the intentions of the parties as provided in the contract.[16]

■ But is dismissal within the court's power to grant? Both Judge Sifton and the court in *Flake* felt that dismissal "could only reflect the application of § 1406." 882 F.Supp. at 951–52. Cf. 862 F.Supp. at 916. This is not so, however. A dismissal need not be predicated on improper venue, or specifically authorized by § 1406. The common-law doctrine of forum non conveniens illustrates the point. As the Supreme Court has recognized, even where it "is conceded that the venue statutes of the United States permitted the plaintiff to commence his action in the Southern District of New York and empower that court to entertain it . . . that does not settle the question whether it must do so. . . . This Court, in one form of words or another, has repeatedly recognized the existence of the power to decline jurisdiction in exceptional circumstances." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Just as a federal court may decline to exercise its jurisdiction in cases of forum non conveniens, notwithstanding the absence of a

---

**16.** It does not follow that dismissal will *always* be an appropriate remedy. If the parties had specified that disputes could only be resolved in the state courts of New York, their agreement could be enforced by remanding the removed case back to those courts. *Cf. Jones v. Weibrecht*, 901 F.2d at 19 (stating that transfer under § 1404(a) is inappropriate where party seeks dismissal or remand to state court); *Karl Koch*, 838 F.2d at 660 (upholding district court's order dismissing action and remanding to state court based on forum-selection clause); *Seward*, 888 F.2d at 962 (upholding dismissal of action based on forum-selection clause specifying state court as appropriate forum of adjudication). If they had provided for resolution only in the United States District Court for the Southern District of Florida, a transfer might be the appropriate remedy even if defendant moved for dismissal.

specific statute authorizing the dismissal, the court may similarly dismiss on the closely-related grounds that the parties have agreed in advance that some other forum is the more convenient location for resolution of the dispute.[17] Indeed, the early cases cited in *The Bremen* as precursors of its more favorable view of forum-selection clauses, *see* 407 U.S. at 11 n. 10–11, 92 S.Ct. 1907, including a number of prescient decisions of the Second Circuit, speak in terms of whether the court should "decline to exercise jurisdiction," *Central Contracting Co. v. Maryland Cas. Co.*, 367 F.2d 341, 342 (3d Cir.1966), and dismiss as the mechanism for enforcing the clause; none speak of improper venue or invoke § 1406(a) or any other statutory basis for dismissal. *See id.; William H. Muller & Co. v. Swedish American Line Ltd.*, 224 F.2d 806, 808 (2d Cir.1955), *overruled on other grounds, Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200 (2d Cir.1967); *Cerro De Pasco Copper Corp. v. Knut Knutsen, O.A.S.*, 187 F.2d 990 (2d Cir.1951) (Frank, J.). The Second Circuit has similarly dismissed on the basis of forum-selection clauses in more recent cases, again without invoking § 1406(a). *See, e.g., AVC Nederland B.V. v. Atrium Investment Partnership*, 740 F.2d 148 (2d Cir.1984) (Friendly, J.).

In fact, in keeping with the view expressed in Part I of this opinion, many of these decisions, as well as some more recent decisions, treat the entire matter not as one for a procedural motion addressed to venue at all, but simply as a decision to enforce the agreement of the parties as written. Thus, Judge Frank in *Cerro De*

*Pasco*, thought that, far from dismissing the case for lack of jurisdiction or proper venue, a court enforcing a forum-selection clause "took jurisdiction and granted specific performance of Clause 12 of the bill on the ground that that provision was fair and not against public policy, all the facts considered." 187 F.2d at 991 n. 1. Similarly, the Third Circuit in *Central Contracting*, 367 F.2d 341, echoed more recently by the First Circuit in *LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.*, 739 F.2d 4 (1st Cir.1984), affirmed dismissal based on forum-selection clauses on the authority of Rule 12(b)(6), for failure to state a claim for which relief can be granted.[18] As those courts noted, the clause does not deprive the plaintiff's chosen forum of jurisdiction or venue; rather, to the extent allowed under *The Bremen*, it is simply a binding contract between the parties that relief under the overall agreement may only be had in particular courts—a contract which, as Judge Frank recognized, a court may in effect order specifically performed. The Supreme Court used similar language in *The Bremen*, indicating that a court faced with a forum-selection clause may "specifically enforc[e] the forum clause" by declining to "exercis[e] its jurisdiction to do more than give effect to the legitimate expectations of the parties." 407 U.S. at 12, 92 S.Ct. 1907. This is not the language of faulty venue, but the language of contract law: where the contract on which the plaintiff sues specifically denies the remedy sought by plaintiff—relief granted by the court in which he sues—the plaintiff has not stated a claim on which relief can be granted by that court.[19]

**17.** At least one district court in this circuit, in fact, has invoked the doctrine of forum non conveniens itself as a basis for enforcing a forum-selection clause. *See TUC Electronics, Inc. v. Eagle Telephonics, Inc.*, 698 F.Supp. 35 (D.Conn.1988). But the dismissals in cases like *Carnival Cruise Lines* are altogether more summary, and thus appear distinct from the discretionary, multi-factor approach used in applying that doctrine.

**18.** In *Central Contracting*, as, indeed, in the instant case, the motion to dismiss was effectively transformed into a motion for summary judgment, because the resolution of the motion required reference to documents beyond the complaint itself. *See Central Contracting*, 367 F.2d at 343. But this does not affect the point in the text that the basis of the motion is failure to state a claim, not lack of venue.

**19.** The contractual agreement to litigate in a particular forum can be enforced by means

To summarize, then: (1) The presence of a forum-selection clause does not deprive the disfavored forum of jurisdiction or venue, where the conditions of subject matter and *in personam* jurisdiction and proper venue are otherwise met. (2) Cases in both the Supreme Court and the Second Circuit have long recognized that dismissal is an appropriate remedy by which a district court may enforce a forum-selection clause; such dismissal may be based either on the court's inherent power to decline jurisdiction, by analogy to the traditional doctrine of forum non conveniens, or on the power under Rule 12(b)(6) to dismiss an action for failure to state a claim. (3) Transfer of the case to another district may also be an available remedy, certainly where the defendant seeks that remedy by motion pursuant to § 1404(a), and possibly even sua sponte by the court when the defendant seeks dismissal. The court must weigh in each case whether dismissal or transfer is the most efficient and just means of enforcing the clause.

As indicated above, there are factors suggesting that dismissal might be the more appropriate remedy in this case. One still further wrinkle to this particular case, however, makes it unnecessary to decide which remedy would be granted if the forum-selection clause were the only issue presented by this motion.

## IV

### *Effect of the Limitations Clause*

It will be recalled that defendant moved for dismissal on *two* grounds rooted in contractual provisions: the forum-selection clause and an additional clause providing that any claim had to be brought within one year of the episode giving rise to the cause of action. The effects of the two potential types of dismissal would be quite different. A dismissal based on the forum-selection clause would mean only that the suit had been brought in the wrong place; plaintiff would be free to try its luck in one of the fora authorized by the clause. A dismissal based on the time-limit clause, however, would be a determination that under the contract, relief could not be granted in *any* forum. Once again, the court is faced with a conundrum about available remedies: If, as has been found above, the parties have determined that this action should be brought in some other forum, and that agreement is binding on this court, should not the court simply decline to proceed further, and either dismiss the action altogether on forum-selection grounds or transfer the case to the Southern District of Florida, in either case leaving it to some other court to decide the limitations issue? On the other hand, defendant has also moved for dismissal on the basis of the latter clause. Such a dismissal would make further litigation unnecessary, and the parties have fully briefed the issue: does not judicial efficiency argue for the complete resolution of the case, if such can be had, rather than for this court to push that issue onto some other court's crowded docket?

The court, then, faces two further questions: (1) In light of the forum-selection clause, is there any basis for this court to consider the limitations issue at all? (2) If the issue can be considered, is *that* clause valid and enforceable under the circumstances of this case?

### A. *Can the Time–Limit Clause Be Considered in this Court?*

If defendant were correct that the forum-selection clause deprived the court of subject matter jurisdiction over plaintiff's claims, that would be the end of the matter: once a court determines that it lacks jurisdiction, nothing further can be decid-

---

other than motions to dismiss actions brought in violation of the agreement. *See, e.g., Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216 (5th Cir.1998) (affirming grant of declaratory judgment that forum-selection clause was valid and that cases must be brought in foreign forum). This is further confirmation that enforcing the forum-selection clause is best seen as a matter of substantive contract law.

ed, no matter how efficient it might be to dispose of some other aspect of the case, nor how earnestly the parties wished the court to adjudicate. Subject-matter jurisdiction "functions as a restriction on federal power," and consequently "no action of the parties can confer [it] upon a federal court." *Ins. Corp. of Ireland,* 456 U.S. at 701, 102 S.Ct. 2099. As has already been established, however, the clause does not affect our jurisdiction over this case.

■■■ Unlike subject matter jurisdiction, the lack of *in personam* jurisdiction or of proper venue can be waived. *See* FED R. CIV. P. 12(h)(1) (waiver of objection to venue if untimely); 28 U.S.C. § 1406(b) (same); *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) (noting that venue is a personal privilege that may be waived). A fortiori, a party with a contractual right to block litigation in a particular forum can waive any rights the contract confers on it.

■■ The parties here, by their respective litigation tactics, have waived the forum-selection clause, at least to the extent of submitting to this court this issue of the validity and application of the limitations clause. Plaintiff union not only brought this case in New York, but also actively fought to keep the case in this court, opposing defendant's argument that the forum-selection clause applied, and arguing the merits of the limitations-clause issue. Nowhere in its submissions has plaintiff suggested that the court should not decide that issue. By bringing suit in New York in violation of the forum-selection clause, plaintiff undoubtedly has waived any right to insist on its enforcement. Had defendant not moved to dismiss, but instead acquiesced in adjudication on the merits, plaintiff could not then have objected to an unfavorable outcome on the ground that the court should not have decided the case plaintiff itself had brought.

■■ Although defendant has raised the forum-selection clause as a defense, it has presented that and the limitations clause in

the alternative, in fact placing the limitations issue first in its brief. (Def.'s Mem. Supp. Mot. Dis., at 9–12.) Because a favorable resolution of the limitations issue would be more advantageous to defendant than a dismissal or transfer on forum-selection grounds, there can be no doubt that by raising the issue in the manner it has, defendant has intelligently and voluntarily waived its rights under the forum-selection clause, at least to the extent of seeking adjudication of the limitations issue. Both parties, then, have agreed to submit this issue to this court for resolution.

Such a partial waiver of the forum-selection clause does not bind this court. If defendant sought to waive the forum-selection clause in order to present a complex motion addressing the merits of the case, for example, while still arguing in the alternative that if the motion were denied, the court should apply the forum-selection clause and transfer the case elsewhere, neither fairness nor efficient judicial administration would be served by deciding the motion first. But that is not the case here. Defendant relies on two closely-related contractual provisions, each distinct from the underlying merits of the case, and each dispositive of the case before this court. The validity of the two clauses depends on similar considerations. For these reasons, judicial efficiency and fairness to the parties are furthered rather than undermined by reaching the merits of the limitations issue, as the parties have each requested us to do. There is thus no reason for the court to decline the parties' invitation to decide this issue, even in the presence of a valid forum-selection clause directing the case to courts in Florida.

B. *Is the Limitations Clause Valid and Applicable?*

The contract for passage provided, in ¶ 12 of the ticket, that

*[I]n no event shall any suit for any cause against the carrier with respect to delay, detention, personal injury, illness*

or death or *any reason* be maintainable, unless suit shall be commenced within one (1) year from the day when the delay, detention, personal injury, illness or death of the passenger or other incident occurred, notwithstanding any provision of law of any state or country to the contrary.

(Busiman Decl., Ex. A ¶ 12) (emphasis added). It is undisputed that the ill-fated voyage complained of was concluded on May 24, 1998, and that the instant lawsuit was filed on January 10, 2000, much more than a year later. (*See* Compl. ¶ 7; Def's Mem. Supp. Mot. Dis., at 10.) If the clause is valid and applicable to this suit, the suit cannot be maintained.

The clause by its terms applies to this case. The language is sweeping, manifestly intended to cover "any" suit for "any reason." Nothing in its terms limits its application based on the nature of the lawsuit or the identity of the plaintiff, and, as demonstrated above, the provisions of the contract embodied in the ticket were intended to bind purchasers such as plaintiff as well as the passengers who used the ticket. If valid, then, the clause applies to this suit.

▮▮▮▮ The validity of contracting parties' efforts to shorten an otherwise-applicable limitations period by agreement has received almost as much attention from the courts as have forum-selection clauses. It is well established that such limitations clauses in tickets for sea passage are valid and enforceable under federal maritime law, provided that the limitations period allows the passenger at least one year from the date of injury to sue, 46 App. U.S.C.A. § 183b(a) (Supp. V 1987), and provided that the instrument gives the purchaser adequate notice that clauses in the ticket may limit rights to sue. *See Spataro v. Kloster Cruise, Ltd.*, 894 F.2d 44, 45 (2d Cir.1990). See also *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 245 (3d Cir.1987); *Lerner v. Karageorgis Lines*, 66 N.Y.2d at 485, 497 N.Y.S.2d 894, 488 N.E.2d 824; *Shankles v. Costa Armatori,*

*S.P.A.*, 722 F.2d 861, 864 (1st Cir.1983). Here, as in *Spataro*, the ticket "reasonably communicated the contractual limitations period" to the purchaser. 894 F.2d at 46. The face of the ticket, as noted above, contained a bold, large print, boxed notice, specifically calling the purchaser's attention to the fact that the ticket contained terms limiting the cruise line's liability. The cases upholding such provisions are replete with variations on the type face, font size, color, and location of notices of this type; some seem, on balance, more prominent or explicit than defendant's, and others less. But the notification here is certainly adequate, so much so that plaintiff makes no attempt to argue that it was not. Instead, it relies entirely on its argument that, as purchaser rather than passenger, it was not bound by the ticket provisions in any event. That argument has been rejected.

Therefore, the limitations clause of the contract is enforceable. Because this suit was brought more than one year after the incident complained of, the contract does not permit it to be brought, and the action must be dismissed.

V

*Conclusion*

Although careful consideration of procedural minutiae has extended the discussion of the instant motion, the result is straightforward. Whatever qualms a court might have about applying fine-print terms of an adhesion contract to relegate cruise passengers to distant fora and shortened limitations period, such qualms do not apply to the sophisticated purchaser here, and *Carnival Cruise Lines* forecloses them in any event. Under federal maritime law, defendant cruise line is entitled to enforce both the forum-selection and one-year limitations clauses it has written into the tickets. For the reasons stated above, the simple and conclusive disposition of this case is also the legally correct one: the complaint is dismissed, with prej-

udice, for failure to comply with the agreed-upon one-year limitations period.

SO ORDERED.